Ross P. JONES, Appellant,

v.

Betty Marie JONES, Appellee.

No. 6700.

Supreme Court of Alaska.

July 8, 1983.

Thomas L. Melaney, McVeigh & Melaney, Anchorage, for appellant.

M. Ashley Dickerson, Anchorage, for appellee.

Before BURKE, C.J., RABINOWITZ, MATTHEWS, and COMPTON, JJ., and HODGES,* Superior Court Judge.

RABINOWITZ, Justice.

Ross Jones appeals from the superior court's property division and child support order which was incorporated in a final divorce decree. He complains that child support was retroactively modified, and that the superior court erred in ordering that his property award be paid as a credit against his child support obligations. We hold that the superior court erred and remand the matter for further proceedings in light of our disposition.

\* Hodges, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

## I.

## FACTS

Ross and Betty Jones were married in 1967 and have two children, born in 1970 and 1972. Betty and the children moved out of the family residence early in January 1979. In February, she filed a complaint for divorce. In December 1979, following a hearing before a master, the superior court adopted the master's report and ordered Ross to pay the suggested $165 per child per month as "interim" child support; the superior court also adopted the master's finding that the total child support expenses were $285 per month per child. At that time Ross' net monthly earnings equalled $1,600; Betty's net monthly earnings equalled $1,400. Ross was ordered to move out of the family residence. Betty and the children moved in. An interlocutory divorce was granted in January 1981. This interlocutory decree provided that the parties' property rights were to be adjudicated in a separate hearing.

The issues of property division and child support were eventually tried in the superior court. At trial, Betty testified that Ross was approximately $3,680 in arrears under the interim support order for the period from December 1979 through November 1981. Betty testified that her expenses for herself and the children had increased by approximately $500 over the expenses established by the superior court's findings at the time of the entry of the interim support order. She did not indicate what portion of this increase was due to expenses for the children. She testified that her net monthly income had increased by $50–$100 in that period.

Ross testified that he had been on strike since July 1981, and was receiving around $800 per month in strike benefits. He claims that his monthly expenses had not changed substantially since the previous year. Three appraisals of the family residence were admitted into evidence. The

first, dating from August 1979, valued the house at $90,920; the second, dating from November 1980, valued the house at $101,000. The third, completed in October 1981, valued the house at $131,500. The outstanding balance on the home mortgage was approximately $30,000.

The superior court found the current equity in the home to be $100,000. While the superior court expressly stated that it was not making a mathematically precise division, it is apparent that its intention was to equally divide the equity in the home. Ross' share, $50,000, was reduced by adjustments totaling approximately $25,000. The $25,000 in adjustments was arrived at in the following manner: $7,455 for home improvements paid for by Betty; $5,000 of Betty's total attorney's fees; child support for the ten months of 1979 prior to entry of the interim support order at the rate of $250 per child per month for a total of $5,000; and arrears since entry of the interim order based on the $250 figure in the amount of $8,000.

The superior court further ordered that Betty discharge her $25,000 equity obligation by giving Ross a credit of $125 per child per month against his child support obligation, and the remainder by payment in a lump sum after the children both reach the age of majority.

Ross appeals.

## II.

### RETROACTIVE MODIFICATION OF CHILD SUPPORT DECREE

■ The superior court retroactively altered the existing child support decree in that it (1) provided that child support be paid for the period between the separation and the interim support decree (January through November of 1979) and (2) increased from $165 to $250 (plus one-half of any unreimbursed medical and dental bills) the monthly amount to be paid per child for

the period during which the interim child support award was in effect.

The issue of retroactive modification of child support is one of first impression in Alaska. A majority of jurisdictions hold that, at least in the absence of extraordinary circumstances,[1] child support orders may not be modified retroactively. *See, e.g., In Re Marriage of Olsen,* 24 Wash.App. 292, 600 P.2d 690, 693 (1979); *Trunkey v. Johnson,* 154 Kan. 725, 121 P.2d 247, 250 (1942). H. Clark, *The Law of Domestic Relations in the United States,* 499, 500 (1968); Annot., 52 A.L.R.3d 156, 160–62 (1973). There is no evidence in this record of extraordinary circumstances. Betty Jones merely testified that her monthly expenses for utilities, food and schooling had increased since the interim order was entered. There also was no evidence offered at trial which contradicted the prior master's finding that no child support should be awarded for the period from January through November of 1979. The only evidence relating to expenses for the children at that time is the same evidence previously relied upon by the superior court in approving the master's report, which determined that total expenses for the children were $285 per child per month. Based on his own prior findings and the lack of any evidence to alter the result previously reached, we think it was an abuse of discretion to reduce Ross' award by any more than $165 per month per child for this period.

## III.

### THE STIPULATION AS TO THE AMOUNT OF ARREARAGES

■ It was, of course, permissible for the trial court to reduce Ross' share in the property by the amount of his support payments in which he was in arrears. Betty testified that as of the time of trial, Ross was $3,680 in arrears in his child support obligation under the interim order.

---

1. *See, e.g., Ford v. Ford,* 24 Cal.App.3d 62, 100 Cal.Rptr. 817, 819–21 (1972) (permissible to require the reimbursement of a custodial par-

ent for a portion of specific expenses incurred for emergency medical treatment of a minor child).

Ross contends, however, that the trial judge was bound by the figure of $660 in arrears for the period up to November 28, 1981, because that amount was stipulated by the parties in a prior contempt proceeding to enforce the interim order, and ultimately incorporated into a judgment issued in that proceeding.

■ A stipulation of the parties concerning child support is not binding upon our courts if such a stipulation would be detrimental to the best interests of the children involved. *See Malekos v. Chloe Ann Yin,* 655 P.2d 728, 730 (Alaska 1982) in which we held that the waiver of decretory child support by a custodial parent barred the recovery of arrearages. In that opinion, we noted that "[a]n agreement between the parties cannot limit or abridge the court's continuing authority to modify a divorce decree to safeguard the best interests of the child." *Id.* at 732.

■ Here there is no evidence in the record to indicate that the interests of the children were compromised by the stipulation as to the amount of arrearages. Betty was in no manner coerced into making the stipulation. The parties' own records of payments made and received up to that time are spotty at best. The evidence indicates that the children have been adequately provided for throughout. Therefore, we see no reason for the superior court to have disturbed the prior judgment as to the amount of arrearages. The superior court was, however, free to determine the amount of arrearages accrued subsequent to November 23, 1981. Because of the absence of any breakdown in the computation of arrearages, we remand for recalculation in accordance with the views expressed herein.

## IV.

### CREDIT GIVEN TO WIFE IN PROPERTY DIVISION FOR COST OF HOME IMPROVEMENTS AND REPAIRS

Ross claims that the trial court erred in its treatment of sums expended by Betty on the home during the period of her posses-

sion between the date of the interlocutory divorce decree and that of the property division. First, he argues that he was charged twice for these expenditures because the appraisal upon which the calculation of his share of the equity was based expressly excluded the value of those improvements. Thus, subtracting their cost from that already adjusted share constituted a double deduction. Second, Ross contends that even if the trial court did not already take the home improvements and repairs into consideration in making the initial property division, it erred in charging Ross for the entire cost, rather than one-half of it.

■ With respect to the first argument, we note that the superior court did not expressly state whether it relied exclusively on the most recent appraisal which excluded recent painting and carpeting in valuing the joint equity in the property at $100,000. Nowhere did the superior court state that its valuation excluded post-October 1 improvements. Given the three appraisals in evidence, it was within the discretion of the superior court to find that the value of the equity, including recent improvements and excluding the approximately $30,000 mortgage outstanding, was $100,000.

■ With respect to the second argument, we agree with Ross that charging him for the entire $7,455 in repairs, without explanation, would constitute an abuse of discretion. It is generally presumed that a 50–50 property division is the most equitable staring point. *See Wanberg v. Wanberg,* 664 P.2d 568 (Alaska 1983). Here, both parties agreed on an initial even division, with certain adjustments of the family home which constituted their primary asset. In order to charge Ross for all of the repair costs incurred, the superior court must offer some explanation for its action. *See Merrill v. Merrill,* 368 P.2d 546, 547–48 (Alaska 1962):

When called upon ... to review the justness of the division of property in a divorce action, we need to be informed by the trial court what it found to be the

ultimate facts upon which it based its conclusion that the property should be divided as it has decreed.

(Footnote omitted.) Otherwise, this amount should be subtracted from the total equity before it is divided in half. Therefore, we remand for further findings on this issue.

## V.

## REPAYMENT OF EQUITY AS A CREDIT AGAINST MONTHLY CHILD SUPPORT INSTALLMENTS

■ Ross challenges the method of payment as well as the amount of his share of the property. The relevant standard of review of a superior court property division decree is abuse of discretion. *Rhodes v. Rhodes,* 370 P.2d 902, 905 (Alaska 1962). An abuse of discretion will be found only where "we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." *Lovell v. Lovell,* 645 P.2d 151, 152 (Alaska 1982).

■ In our opinion, it was an abuse of discretion to structure the payment of Ross' share of the property as a $125 per child per month credit against his child support obligations. This scheme left Ross with no monies with which to make a downpayment on a new home, no interest on his money for the years it would take to collect it, and nothing securing the outstanding balance.

We are unable to find any case in which installment payments without interest or security were approved by this court.[2] *See Mullaly v. Mullaly,* 518 P.2d 1395, 1398 (Alaska 1974) in which this court specifically called attention to the husband's "fully

secured interest" in approving a monthly installment repayment scheme.

If Betty is unable to finance the entire amount of her debt to Ross, she should be ordered to take out as large a loan as she can reasonably afford in order to give Ross the immediate benefit of at least a portion of his equity. Any remaining debt to Ross should be secured and should bear interest at market rates. Therefore, we hold that upon remand it will be necessary for the superior court to restructure the method of property award payment, as it applies to Ross.

## VI.

## ATTORNEY'S FEES

■ The superior court made no findings with regard to attorney's fees other than to hold that Ross would have to pay $5,000 to Betty for her attorney's fees.

In *Burrell v. Burrell,* 537 P.2d 1 (Alaska 1975), we stated that the "prevailing party" rule, used for determining attorney's fees awards under Alaska R.Civ.P. 82 is not applicable to fee awards in divorce actions. Instead, "[t]he parties' relative economic situations and earning powers are relevant factors to be weighed in determining whether to order payment pursuant to AS 09.55.200(a)(1)." 537 P.2d at 7.

In this case, the net incomes of the husband and wife are similar. Currently, Betty may even be in the better economic situation because Ross has been out of work due to a strike. These facts weigh against the award of attorney's fees to Betty.[3]

The award of attorney's fees is vacated. On remand the judge shall reconsider the award of attorney's fees and state on the record his reasons for any award he makes.[4]

---

2. *Cf. Lovell,* 645 P.2d 151 (Alaska 1982) (divorce decree awarding $20,000 in property, payable at a rate of $250 per month without security, vacated on other grounds).

3. It appears, from the record, that one reason for the high level of fees may have been that Betty felt it necessary to take Ross to court on at least two occasions in order to enforce the interim order. However, it would be an abuse of discretion to charge Ross with substantially

all of Betty's fees on that account. If that was the reason for the award, it should be limited to the amount of Betty's fees due to the enforcement proceedings.

4. *See Johnson v. Johnson,* 564 P.2d 71, 76–77 (Alaska 1977), *cert. denied,* 434 U.S. 1048, 98 S.Ct. 896, 54 L.Ed.2d 800 (1978), where we noted Judge Carlson's statements that it was his policy to have both parties bear their own fees "where each party expended approximate-

## VIII.

## CONCLUSION

The superior court's final judgment is vacated and the matter remanded in order to afford the superior court the opportunity of making additional findings of fact regarding its reduction of Ross' equity share for the full cost of the $7,455 home improvements and for the $5,000 award of attorney's fees to Betty. Additionally, we conclude that the superior court abused its discretion when it retroactively modified the interim child support order in the absence of extraordinary circumstances. We also hold that provisions for security and interest at the market rate should be fashioned by the superior court in order to render acceptable the installment method of paying Ross his share of the equity in the parties' home.

REVERSED in part, and REMANDED for further findings consistent with this opinion.

CONNOR, J., not participating.

ly an equal amount of effort, and the property was divided equally between the parties." It is unclear why the superior court did not follow that policy in the instant case.