Robert **BROOKS**, Appellant,

v.

Iris **BROOKS**, Appellee.

No. 6714.

Supreme Court of Alaska.

Jan. 27, 1984.

George F. Vogt and Associates, Kodiak, for appellant.

Dennis L. Nelson, Sterbick-Nelson & Nelson, Kodiak, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

In this appeal, Robert Brooks challenges the property division made by the superior court in conjunction with a divorce proceeding.

Robert and Iris Brooks were married on December 26, 1957, in Kingston, Jamaica. Iris was 31, Robert 39. They have lived in Alaska since their marriage and in Kodiak for the last twenty years. There are no children of the marriage.

Robert is a carpenter by trade. He worked out of the union in Kodiak until 1969, when he opened a tool and auto rental business which has a current value of $70,000. The business generally shows an operating loss for tax purposes, because of depreciation and other allowances. Operating the business requires a substantial amount of time. According to his attorney, Robert will be eligible for social security at an undetermined rate in about three years. He also has an annuity which will pay $64 per month beginning in 1984.

Iris has worked as a civil servant since the early 1960's. Her current income is approximately $22,000. Iris has a government pension which will pay an undetermined amount on retirement.

In 1980, without the knowledge or consent of his wife, Robert conveyed to his children from a prior marriage two parcels of property acquired during the marriage but held in his own name. These properties, the Martin property and the Bells Flats property, together were worth approximately $106,000.

The assets held by the Brooks prior to their divorce included four pieces of real estate with a total net value of $143,700 and a business worth $70,000. Their land holdings break down as follows:

| Property | Net Value |
| --- | --- |
| Cope Street (Lots 17 & 19) | $40,800 |
| Spruce Cape (Lot 6) | 51,400 |
| Erickson property (Lot 21) | 42,000 |
| Toltec property (Lot 6) | 8,500 |

In addition, Iris had received from her father a one-third interest in Jamaican real estate. Her share was valued at $15,000. Both Iris and Robert held roughly equivalent savings accounts and pension funds of $29,500 and $24,500 respectively.

The superior court made the following division of property:

| To Robert: | | To Iris: | |
| --- | --- | --- | --- |
| Property | Net Value | Property | Net Value |
| Spruce Cape | $ 51,400 | Cope Street | $ 40,800 |
| Tool & Auto Rental | 70,000 | Erickson Property | 42,000 |
| Other Property | 24,500 [1] | Toltec Property | 8,500 |
| | | Other Property | 29,500 [2] |
| | | Promissory Note | 50,000 [3] |
| | $145,900 | | $170,800 |

The divorce decree indicated that Iris "should be credited with her interest in the Jamaica property and for one-half of the values of the Martin and Bells Flats properties." Robert should be "credited with the $26,000 in separate property he brought into the marriage and the expenses he has incurred in the amount of $19,500."

Thus, Robert's conduct during marriage was taken into account by treating him as if he had received the $106,000 worth of real estate which he had already conveyed to his children of a former marriage (the Martin and Bells Flats properties); and Iris' act of removing Robert's name from her health insurance policy was taken into account by subtracting Robert's $19,500 in uncovered expense from his share of the property.

AS 25.24.160(6) (formerly AS 09.55.-210(6)), providing for the disposition of marital property, states:

In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

.    .    .    .    .

(6) for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities between the parties requires it; and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or convey any of his or her real or personal property to the other party.

■ A superior court has broad latitude in making property divisions. *Bussell v. Bussell*, 623 P.2d 1221, 1222 (Alaska 1981). Such divisions "will not be disturbed on appeal unless an abuse of ... discretion is shown. To establish an abuse of discretion the aggrieved party must show that the property division was clearly unjust." *Crume v. Crume*, 378 P.2d 183, 186 (Alaska 1963) (footnotes omitted). *See Wanberg v. Wanberg*, 664 P.2d 568 (Alaska 1983).

■ *Merrill v. Merrill*, 368 P.2d 546 (Alaska 1962), delineates the following fac-

1. This consists of Robert's retirement fund ($10,500), bank accounts in his name and the business name ($14,000), and miscellaneous personalty.

2. This included Iris' retirement fund ($10,500), the bank accounts in her name ($19,000), and miscellaneous personalty.

3. The promissory note is from Robert and secured by a deed of trust on the Spruce Cape property. It bears interest at a rate of 12% and is payable in monthly installments of $800. The $50,000 represents what would have been Iris' share of the Martin and Bells Flats properties which Robert unilaterally conveyed to his children.

tors which a trial court should take into account in making a property division:

> [T]he respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.

368 P.2d at 547–48 n. 4 (citations omitted). This enumeration is not exhaustive and the superior court need not make findings pertaining to each factor, *id.* at 548 n. 10, but the superior court's findings must provide a sufficient basis for the conclusion reached. *Id.*

On appeal, Robert Brooks argues that the superior court failed to give sufficient weight to certain factors relevant to the determination of an appropriate division. His primary point is that, given his age and health, his income earning capacity allegedly "is significantly impaired." He claims he can no longer devote the energy to his tool and auto rental business necessary to maintain its profitability. Iris Brooks, by contrast, shows no sign of not being able to continue her present employment until retirement. Robert also complains that the superior court failed to take into account the fact that much of the increase in value of the parties' real property was allegedly due to improvements which resulted from his labors, without any significant physical contribution by Iris. Additionally, Robert argues that the residential rental property given to Iris has an "established" rental value, whereas the real property awarded him, which is the business, depends upon his business activities for income production. These points allegedly demonstrate that the superior court failed to adequately consider certain of the factors articulated in *Merrill v. Merrill,* 368 P.2d 546 (Alaska 1962), specifically, the respective ages of the parties, their health and physical condition, and their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time, and its income producing capacity. Robert's secondary argument is that the superior court unfairly penalized him for his unilateral conveyances of real property to his children.

■ We have concluded that a remand is necessary. In short, we are unable to review the merits of the superior court's division of the parties' properties because of certain inadequacies in the superior court's findings of fact. There is nothing in this record to indicate what weight, if any, the superior court gave to Robert's apparent physical problems. Related to this issue is Robert's challenge to the superior court's treatment of the income producing character of the property divided. The superior court did not explicitly consider this aspect in making its property division. The residential properties awarded to Iris have established rental values. These rental properties have generated a positive cash flow of $37,900 during the period from 1973–79.[4]

4. The two houses on Cope Street, the Erickson property, and a trailer on the Spruce Cape property showed a combined cash flow as follows (in thousands of dollars):

| Year | Gross Income | Net Taxable Income | Depreciation | Net Cash Flow: Taxable Income Plus Depreciation Deductions |
|------|------|------|------|------|
| 1973 | 8.1 | 1.3 | 3.3 | 4.6 |
| 1974 | 8.5 | 3.1 | 3.0 | 6.1 |
| 1975 | 9.6 | 5.9 | 2.8 | 8.7 |
| 1976 | 8.1 | 1.8 | 2.7 | 4.5 |
| 1977 | 4.2 | (3.1) | 2.6 | (0.5) |
| 1978 | 12.3 | 5.6 | 3.0 | 8.6 |
| 1979 | 9.1 | 4.3 | 1.6 | 5.9 |

It appears that Iris will derive a substantial amount of income from these sources even if we assume that she will choose to live in one of the residences she receives, rather than rent it. We believe that a remand is necessary for specific findings as to the parties' future earning capacities. This aspect of our remand necessarily encompasses consideration of the income producing potential of these rental properties. Further findings are also necessary with regard to Robert's eligibility for and income to be received from social security.

■ Robert also argues that it constituted an abuse of discretion for the superior court to fail to consider the values of the various properties at the times of acquisition in relation to their present values. This factor, delineated in *Merrill,* does appear to be relevant here. The properties were worth far less when acquired than they are at present. Much of the increase in value is allegedly attributable to improvements carried out by Robert. Yet, the parties both borrowed and used proceeds from their business to pay the costs of this construction. The value of the real estate has appreciated over the years and Iris did contribute some physical effort to the improvements. Our review of the record has persuaded us that the superior court was within the scope of its discretion in not awarding the increases in value of the parties' investments solely to Robert.

Robert also asserts that the superior court unfairly penalized him for his unilateral conveyance of the two parcels of jointly purchased real property held in his name. Robert does not claim that the superior court should have ignored those transfers. Clearly, the trial court is permitted to take Robert's conduct during the marriage into consideration by including the value of properties he conveyed in his half of the property division. Robert's point in this appeal is that the means by which the superior court carried out his intention worked an undue hardship on him.

■ Three aspects of the superior court's action in regard to the unilateral conveyances require examination. First, in valuing the Bells Flats property, the superior court used the post-subdivision resale price of the parcel instead of the tax assessment figure which had been stipulated as acceptable by the parties, and had been used in valuing each of the parties' other parcels of real estate. The resale value was significantly higher than the earlier tax assessment. Robert challenges the use of resale value in that it operates to "sanction *sub silentio* the appellant's unilateral conveyance of property." We conclude that the superior court did not abuse its discretion in using this higher figure. The superior court is not necessarily bound by the tax assessment values stipulated to by the parties. The stipulation alluded to was ambiguously worded and does not state whether it includes the Bells Flats and Martin properties or is confined to the properties comprising marital property at the time of the property division. In *Rostel v. Rostel,* 622 P.2d 429, 431 (Alaska 1981), we upheld the decision of the superior court to disregard an indefinitely phrased verbal stipulation. In that case, we stated that the superior court need not be bound by such stipulations but should strive to achieve a "fair and equitable division of property." *Id.*

There is no evidence that the $71,500 does not fairly represent the present value of Bells Flats. Although it is true that the increase in value occurred after the land had been conveyed, we think this development is irrelevant. The superior court was, after all, seeking to assess Robert for the value of what would have been marital property had he not previously disposed of

---

It should be noted that the Erickson property needed some $5,000 worth of improvements in order to be made habitable at the time of trial. One of the Cope Street houses needed "a couple

thousand dollars to rewire it." The Spruce Cape trailer, awarded to Robert, was only a negligible part of the overall cash flow.

it. There has been no new tax assessment since the subdivision. The major change which took place in regard to this real estate, combined with the ready availability of a reliable means of valuation, justified the superior court's use of resale price in lieu of a tax assessment valuation. Therefore, we hold that the superior court's choice of valuation method was not erroneous.

A second aspect of the superior court's action in regard to these unilateral conveyances also should be mentioned. We think the $50,000 promissory note repayment schedule to be problematic in view of Robert's projected income. The promissory note calls for monthly payments of $800 from Robert to Iris. According to the parties' tax returns, Robert's tool and auto rental business generated a positive cash flow of $67,200 in the period of 1973–79, for an average of $9,600 per year.[5] Our review of the record reveals that this was Robert's *only* income during that period and the only potential income anticipated. The superior court's order would require that he make payments to Iris Brooks totalling $9,600 per year. It appears from this evidence that the superior court's ruling effectively leaves Robert with zero income.

Robert further contends that the superior court erred in failing to treat Iris' cancellation of her husband's coverage on her insurance policy as the destruction of a marital asset. We find no merit in this contention. The superior court did take Iris' actions into account in reaching its decision by giving Robert a credit for his medical expenses. This treatment was analogous to the treatment of the Martin and Bells Flats properties which were lost as marital assets through unilateral actions on the part of Robert.

The decree is VACATED and the case is REMANDED for reconsideration and further findings by the superior court in conformity with this opinion.[6]

MOORE, J., not participating.

MATTHEWS, Justice, concurring.

In this case the court intended to divide the property of the parties equally, treating the property Robert had surreptitiously given to his children as though it were still marital property, and allocating it to Robert. Robert does not object to so treating this property, and the majority opinion has approved of it. Therefore this property division should be considered as one in which the assets of the parties were divided substantially equally. An equal division of marital assets is presumptively just. *Jones v. Jones*, 666 P.2d 1031, 1034 (Alaska 1983); *Wanberg v. Wanberg*, 664 P.2d 568, 574–75 (Alaska 1983).

We suggested in *Wanberg* that the factors first set forth in *Merrill v. Merrill*,

5. According to Brooks' joint tax returns, the tool and auto rental business shows the following cash flow (in thousands of dollars):

| Year | Gross Income | Net Taxable Income | Depreciation | Net Cash Flow: Taxable Income Plus Depreciation Deductions |
|------|------|------|------|------|
| 1973 | 54.3 | 6.5 | 13.5 | 20.0 |
| 1974 | 57.9 | (12.8) | 18.6 | 5.8 |
| 1975 | 50.2 | (27.5) | 23.1 | (4.4) |
| 1976 | 76.2 | (3.8) | 23.2 | 19.4 |
| 1977 | 49.4 | 0.2 | 16.8 | 17.0 |
| 1978 | 61.8 | (1.3) | 10.8 | 9.5 |
| 1979 | 55.5 | (18.0) | 17.9 | (0.1) |

6. Jurisdiction of this appeal is retained for the purpose of permitting the parties, if further appellate review is sought, to file supplemental memoranda with this court following receipt of the superior court's additional findings.

368 P.2d 546, 647–48 n. 4 (Alaska 1962) could be most appropriately utilized if trial courts would use an equal division as a starting point and review the factors to determine whether they required a deviation from equality:

> The *Merrill* criteria will be of increased usefulness to a trial court in its determination of an equitable division of property if the court begins its consideration of the *Merrill* factors with the presumption that the most equitable division of the property is an equal division. This starting point is intended to provide a grounding point by which the relevance of the *Merrill* factors may be determined.

*Id.* at 574–575.

Here, in the sense explained above, the trial judge made an equal division, but the record does not reflect that he reviewed the *Merrill* factors to determine whether some adjustment was necessary in order to achieve justice. For this reason I join in the court's opinion remanding this case for additional findings as to those of the *Merrill* factors which are arguably relevant. In reaching this conclusion I do not wish to suggest any view on the merits of the ultimate question, which is whether the property division reached is just.