James A. BURCELL, Appellant,

v.

Deborah L. BURCELL, Appellee.

No. S–603.

Supreme Court of Alaska.

Jan. 31, 1986.

Deidre S. Ganopole, Anchorage, for appellant.

M. Ashley Dickerson, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This is an appeal of a property division entered by the superior court in a divorce action. James Burcell challenges the property division as clearly unjust and based on erroneous findings of fact. We reverse.

## I. FACTUAL BACKGROUND

Deborah and James Burcell were married in Washington in August 1982. No children were born of the union, but both parties have children from previous marriages. Deborah had custody of a young daughter, who lived with Deborah and James.

At the time of their marriage James lived in Juneau, Alaska, and Deborah lived in Washington. Both were employed. They decided to relocate to Anchorage after James' employer, the State of Alaska, offered to transfer him and to pay both parties' moving expenses. Deborah and her daughter joined James in Anchorage in October, and they lived together until March 1983. During that period James earned approximately $3,000 per month before taxes. Deborah was employed for three days during the time the couple lived together. She testified that she tried, but was unable to find a job that would be commensurate with her skills and allow flexibility so she could arrange for daycare.

The record does not reflect that James contributed any separate property assets to the marriage. The controversy centers mainly on the three assets Deborah owned going into the marriage—two cars and approximately $1,200 to $1,400 in a retirement fund. Shortly before their wedding, Deborah sold one of the cars and deposited $2,050 into her bank account. Some of the money from the car sale and her retirement fund was used to pay for the couple's wedding. Deborah testified that she was unsure how much remained at the time of the marriage.

In October 1982 the couple decided to buy a condominium, so Deborah sold her remaining car for $5,100. The money was used mainly to pay off credit card bills in order for the couple to qualify for a commercial loan to purchase the condo. James also borrowed $1,500 from his father to pay initial condo expenses. The Burcells moved in prior to closing, but became dissatisfied with the condo because of apparent defects. They discontinued the purchase, hired an attorney and instituted legal action. A settlement resulted, under which James and Deborah were to receive $2,350. At the time of the divorce trial, approximately $1,885 from the settlement remained in a trust fund of the lawyer who handled the settlement.

In March 1983 Deborah moved to Juneau, where she had been offered a job. James filed for divorce in June 1983.

After a one-day bench trial on May 29, 1984, the superior court granted a divorce and awarded Deborah a $6,825 cash settlement with 10.5 percent interest calculated from June 1, 1983. The court also ordered James to pay $2,500 of Deborah's attorney fees, plus costs. The court awarded the parties their own personal effects, including household items. There were no other assets to distribute.

The court's oral findings indicate that the judge calculated the cash settlement by valuing the separate property he found Deborah had contributed to the marriage (two cars and retirement money), and then subtracting for payment of certain premarital debts. The court gave James a $1,000 "credit" for his estimated contribution to the support of Deborah's child. James appeals both the property division and the award of attorney's fees.

II. DISCUSSION

■ The division of property in a divorce proceeding is within the broad discretion of the trial court and will not be disturbed unless it is clearly unjust. *Hunt v. Hunt*, 698 P.2d 1168, 1171 (Alaska 1985). AS 25.24.160(4)[1] places all property acquired during the marriage, "whether joint or separate," before the court for division. The statute also authorizes invasion of pre-marital holdings of either spouse "when the balancing of the equities between the parties requires it...." We have held that

the trial court has broad discretion to invade pre-marital assets, and that "some fact situations are sufficiently compelling that a refusal to invade is clearly unjust." *Wanberg v. Wanberg*, 664 P.2d 568, 571 n. 10 (Alaska 1983); *Burrell v. Burrell*, 537 P.2d 1, 6 (Alaska 1975).

James contends the property division is clearly unjust because the court ignored certain relevant factors, including the gross salary of approximately $21,000 that James earned while he and Deborah lived together and the couple's outstanding debts at the time of separation. James challenges the fact findings as clearly erroneous, and asserts that the court abused its discretion by not dividing the property and debts equally.

■ On review, findings of fact "are clearly erroneous if, based on the record as a whole, the court is left with the definite and firm conviction that a mistake has been made." *Headlough v. Headlough*, 639 P.2d 1010, 1012 (Alaska 1982). This is such a case. The trial court's findings make no mention of the $1,885 remaining from the condominium settlement, the $1,500 owed to James' father, or certain credit card debts existing at the time the parties separated. Although the record is muddy, James contends that marital charges were made on the credit card accounts and that the debts should have been divided. In any event, the court should have explained its reason for not dividing such debts and settlement money.[2]

---

1. AS 25.24.160 provides, in relevant part:

    In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

    . . . . .

    (4) for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities between the parties requires it; and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or

    convey any of their real or personal property to the other party;

    The above subsection was designated as subsection (6) prior to October 1, 1985.

2. The court also erred in finding that $1,350 of Deborah's retirement money was spent for wedding expenses. Even if the court properly concluded that James should reimburse Deborah for one-half the cost of the wedding, the record does not support the court's $1,350 figure. As Deborah's counsel conceded in her brief, the mathematical computations the court made were "a little confusing." According to Deborah's trial testimony, she spent "six-seven-eight hundred, I don't know" on the wedding.

We conclude, after reviewing the record, that the property division was clearly unjust. There is no indication that the trial court took into account James' salary contribution to the marriage. We have held that, when deciding a property division, a court should consider each spouse's relative contributions to the marriage, "whether of a pecuniary or of a more intangible nature." *Bussell v. Bussell,* 623 P.2d 1221, 1223 (Alaska 1981) (quoting *Vanover v. Vanover,* 496 P.2d 644, 648 (Alaska 1972)). Thus, both earnings and nonmonetary contributions are relevant. During the time James and Deborah lived together, he earned approximately $21,000 in gross salary, which essentially provided the sole financial support for Deborah and her daughter. The parties shared household responsibilities. Both these facts should have been considered, rather than just Deborah's contribution of pre-marital assets.

In determining an equitable division of property, a court's starting point is the presumption that an equal division is the most just. *Jones v. Jones,* 666 P.2d 1031, 1034 (Alaska 1983). From there, the division is governed by the application of the factors announced in *Merrill v. Merrill,* 368 P.2d 546 (Alaska 1962).[3] While a trial court need not make findings on all of the *Merrill* factors, the court here failed to mention several relevant considerations, including the parties' ages, their health, their financial circumstances and future needs.

Because we conclude that the trial court findings are clearly erroneous and the division of property unjust, we must set aside the property settlement and remand for the court to take additional evidence and enter new findings. *See Brooks v. Brooks,* 677 P.2d 1230, 1233–34 (Alaska 1984). The court should consider not only the assets and money that Deborah contributed to the marriage, but also the settlement from the condominium litigation and James' salary contributions. The court also should clearly identify all debts incurred by the parties immediately preceding and during the marriage, including credit card charges and loans from all sources.

▪ We note that in determining the property settlement the trial court took into account James' voluntary support of Deborah's child from a previous marriage. We find no abuse of discretion in considering such support. *See Burgess v. Burgess,* 710 P.2d 417, 422 (Alaska 1985). However, the court did not explain its basis for finding that $1,000 was the amount James had contributed for support. There is no evidence in the record regarding specific expenditures for the child, nor did the parties' trial testimony cover the subject. Upon remand, the court should reconsider this issue.

▪ One final aspect of the superior court's decision deserves mention. James asserts error because the court divided the property based on the date of permanent separation, in accord with the doctrine of "equitable divorce," rather than the date of divorce. The doctrine of equitable divorce "essentially provides that, where there is clear and unequivocal evidence that at a particular point prior to divorce the parties' marriage is no longer viable, identification of marital assets for the purposes of property division will be made as of that time rather than as of the date of divorce." *Bussell v. Bussell,* 623 P.2d 1221, 1223 (Alaska 1981).

We cannot say that the trial court abused its discretion in treating June 1, 1983 as the date of termination of the Burcells' marriage. *See Hunt v. Hunt,* 698 P.2d 1168, 1171–72 (Alaska 1985); *Burgess v. Burgess,* 710 P.2d 417, 421 n. 6 (Alaska 1985). James and Deborah separated in March 1983, after only seven months of marriage. In late May a reconciliation effort failed,

---

**3.** *Merrill* enunciated the following as the principal factors that should be considered: each party's respective age, earning ability, station in life, health and physical condition, and circumstances and needs; the duration of the marriage; the conduct of the parties during the marriage; and the parties' financial circumstances, including the time and manner of acquisition of property, its value at the time of divorce, and its income-producing capacity, if any. 368 P.2d at 547 n. 4. The list of factors is not exhaustive. *Id.* at 548 n. 10.

and James filed for divorce on June 29, 1983. The divorce was not granted until May 29, 1984. Given these circumstances, the court did not abuse its discretion in relying on the date of permanent separation in its division of property and award of interest.

The superior court's division of property is REVERSED and the case REMANDED for further proceedings consistent with this opinion.[4]

---

**4.** Because we remand for further proceedings, we need not consider James' contention that the

court abused its discretion in awarding attorney's fees to Deborah.