**Elijah LANG, Appellant,**

v.

**Ella LANG, Appellee.**

**No. S–1336.**

Supreme Court of Alaska.

Sept. 4, 1987.

Elijah Lang, pro se.

Maryann E. Foley, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

At issue in this appeal from the superior court's division of marital property is the award to Ella Lang of the parties' two real properties and cash savings, as satisfaction of an outstanding judgment against her husband Elijah for child support arrearages, and a one-quarter interest in his military pension. Elijah Lang also contests the court's exclusion from the marital estate of two additional real properties owned by Ella. Because the superior court failed to make essential findings of fact, we are unable to ascertain whether the property division in this case was equitable. We thus vacate the superior court's decree and remand for further proceedings.

FACTS AND PROCEEDINGS.

Ella and Elijah Lang separated in September 1975 after fifteen years of marriage. Elijah retired from the army at about the same time that the parties separated, and receives a military pension of $900 per month. During the marriage, Ella worked sporadically at various jobs and is now employed as a school custodian. Elijah presently works as a part-time laborer. The record does not reveal the amount of either spouse's present income, of Ella's past income, or of her retirement benefits.

At the time of the marriage, the Langs owned no significant property. They acquired two residential properties in Texas of uncertain value [1] and an undetermined amount of cash savings during the course of the marriage. Subsequent to their separation, Ella also purchased a house and a triplex in Anchorage.[2]

Shortly after separating in 1975, the parties evidently agreed that Ella would receive all rents generated by the two Texas properties in lieu of cash support from Elijah.[3] In May 1979, the superior court entered a judgment and order of support stating that Elijah owed Ella $11,100 in past due support as of December 19, 1978, and ordering him to pay child support of $500 per month ($250 for each of the couple's minor children) commencing in January 1979. Elijah subsequently made some support payments, the amount of which is unclear. On June 7, 1985, the court en-

---

1. Private property appraisals submitted by Ella indicated the fair market values of the properties to be $42,500 and $18,000 in September 1985. In 1984, the County of Dallas had valued them at $29,500 and $11,030, respectively.

2. The facts concerning the source of the funds used to purchase the various real properties and contained in various bank accounts are undocumented. According to Elijah, the savings accumulated during the marriage, including approximately $22,000 now in an account held by Ella, came primarily from his earnings. He contends that Ella at unspecified times withdrew money from joint accounts and redeposited it in her name. With respect to Ella's Anchorage properties, Elijah similarly contends that she used his pre-separation earnings to purchase them. He was not questioned about the acquisition of the Texas properties at the hearing, but both he and Ella are named as owners on the title documents.

By contrast, Ella asserts that she and Elijah had no joint bank accounts or investments at the time of separating and that the approximately $22,000 in savings came from her earnings and the children's earnings. (Ella evidently ac-

cumulated other savings as well, given that her 1983 tax return specified interest income of nearly $12,000, but she has acknowledged possession of only one corpus of $20–23,000.) She contends that she purchased the Anchorage properties by assuming a mortgage on the house and borrowing funds for the triplex, but has produced no verification of these transactions. As to the two Texas properties, Ella testified that one was at least partially purchased with bonds withdrawn from her personal account and the other given to her and the children by her aunt. In her brief on appeal, however, Ella asserts that she testified this property was acquired from joint monies.)

3. The total net income generated by these properties since the parties' separation is unclear. The rents received were $375 and $275 per month, but the properties have periodically been vacant. Ella submitted tax records for some of the years in question, but they do not reflect a consistent amount of gain or loss (net losses of $3,746, $682, and $3,088 in 1979, 1980, and 1984, principally due to expenses for repairs, and net gains of $2,696, $1,819, and $1,931 for 1981–83).

tered a judgment against Elijah for child support arrearages, including interest, through March 20, 1985, of $28,177.95.

The superior court entered a decree of divorce and findings of fact and conclusions of law on November 18, 1985. The court found that the parties jointly owned the Texas properties and "had bank accounts" at the time of the divorce, but made no findings as to the value of these assets. The court further found that Elijah owed Ella $28,177.95 under the outstanding judgment for child support arrearages, and that Ella had an interest in Elijah's military pension. The court awarded Ella the Texas properties and "any interest in any bank account that the parties may have had" at the time of filing for divorce, and ordered that Elijah's child support arrearages thus be deemed satisfied. The court also awarded Ella one-quarter of Elijah's military pension, commencing October 1, 1985. The superior court did not explain the basis for its property division award beyond the findings described above, but concluded as a matter of law that the award was "fair and equitable."

Elijah now appeals.

JUSTNESS OF THE PROPERTY DIVISION.

 Elijah asks this court to overturn the property division because the superior court failed to consider factors relevant to the division according to our decision in *Merrill v. Merrill*, 368 P.2d 546 (Alaska 1962), and failed to articulate sufficiently specific factual findings to indicate the basis for the division.[4] In *Merrill*, we indicated our need in reviewing the justness of a property division "to be informed by the trial court what it found to be the ultimate facts upon which it based its conclusion that the property should be divided as it has decreed." 368 P.2d at 547–48 (footnote omitted). The trial court thus has a duty "by sufficiently detailed and explicit findings 'to give [this] court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.'" *Id.* at 548 (footnote omitted) (quoting *Irish v. United States*, 225 F.2d 3, 8 (9th Cir.1955)). In a non-jury case, reasonable compliance with the rule that the court "find the facts specially and state separately its conclusions of law thereon" is mandatory. *Id.;* Alaska R.Civ.P. 52(a).

 In making an equitable division of marital assets, the superior court undertakes a three-step procedure: first, it must determine what specific property is available for distribution; second, it must ascertain the value of this property; and third, it must decide how an allocation can be made most equitably. *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983). The principal factors to be weighed by the court in reaching an equitable division are: the parties' respective ages, earning capacities, stations in life, health and physical condition, conduct during the marriage, and circumstances and needs; the duration of the marriage; and the parties' financial circumstances, including the time and manner of acquisition of the property in question, its value at the time of the division, and its income-producing capacity, if any. *Merrill*, 368 P.2d at 547–48 n. 4.[5] This enumeration is not exhaustive and the trial court need not make findings pertaining to each factor, *id.* at 548 n. 10; *Brooks v. Brooks*, 677 P.2d 1230, 1233 (Alaska 1984), but the findings must be sufficient to indicate the factual basis

---

4. The superior court has broad latitude in making property divisions in divorce proceedings. *Brooks v. Brooks*, 677 P.2d 1230, 1232 (Alaska 1984); *Bussell v. Bussell*, 623 P.2d 1221, 1222 (Alaska 1981). We will not disturb such a division absent a showing of abuse of discretion, *Crume v. Crume*, 378 P.2d 183, 186 (Alaska 1963); that is, a showing by the aggrieved party that the division was clearly unjust. *Brooks*, 677 P.2d at 1232; *Malone v. Malone*, 587 P.2d 1167 (Alaska 1978); *Crume*, 378 P.2d at 186. We will find an abuse of discretion in dividing the property only when we are left with a defi-

nite and firm conviction, after reviewing the whole record, that the superior court erred in its ruling. *Jones v. Jones*, 666 P.2d 1031, 1035 (Alaska 1983); *see Lovell v. Lovell*, 645 P.2d 151, 152 (Alaska 1982).

5. In our subsequent decisions, we have often reiterated that application of the *Merrill* factors is the proper approach in making property divisions. *See, e.g., Wanberg*, 664 P.2d at 574 & n. 21; *Burrell v. Burrell*, 537 P.2d 1, 4 & n. 5 (Alaska 1975).

for the conclusion reached. *Id.; see also Burcell v. Burcell*, 713 P.2d 802, 805 (Alaska 1986); *Burgess v. Burgess*, 710 P.2d 417, 422 (Alaska 1985). Review of the merits of the property division is precluded in most cases absent these "threshold" findings. *See, e.g., Brooks*, 677 P.2d at 1233; *see also Merrill*, 368 P.2d at 547–48; *Wanberg*, 664 P.2d at 574 n. 20 [*"Given* adequate factual findings, *and* a demonstration that the trial court weighed those facts in reaching its conclusion, we will not overturn a property division unless it is clearly unjust." (emphasis added)].

Here the superior court failed to adhere to the procedures delineated in *Wanberg* and *Merrill*. The court at least implicitly determined that the property available for distribution consisted of the Texas properties, the contents of any bank accounts existing at the time of separation, and Elijah's military pension.[6] As noted above, however, the court failed to make any findings regarding the value of the property distributed. Considerable evidence was proffered concerning the source and amount of the funds contained in bank accounts, the value of the Texas properties, their income-producing capacities, and the cost of their upkeep. No specific findings were made on any of these points. Further, the court gave no indication of which, if any, of the *Merrill* factors it weighed in

deciding that its allocation was "fair and equitable."

The superior court's failure to articulate specific findings prevents us from determining whether the division of the Langs' property was unjust. We thus vacate the decision below and remand this matter for further findings of fact in accordance with *Merrill* and *Wanberg*. The superior court is to take further evidence if necessary. *See Brooks*, 677 P.2d at 1233–34; *Burcell*, 713 P.2d at 805. The record and briefs submitted on appeal suggest that there may be significant differences in the parties' ages and states of health, present earning capacities, and overall financial circumstances, all of which the court should expressly consider.[7] In this regard we note that, contrary to Elijah's arguments, his military pension does constitute divisible marital property. *See Chase v. Chase*, 662 P.2d 944, 945–46 (Alaska 1983). The court may thus award Ella part of the pension if necessary to effectuate an equitable property division.[8]

**REMANDED** for further proceedings not inconsistent with this opinion.

---

6. Elijah specifically argues that the superior court erred in failing to include the Anchorage house and triplex acquired by Ella as part of the marital estate pursuant to this court's holding in *Hunt v. Hunt*, 698 P.2d 1168, 1171 (Alaska 1985), that "[p]roperty acquired after the permanent separation but prior to final divorce should be included in the property settlement if it was acquired with property which would otherwise have been subject to division." We agree that *Hunt* in this instance requires the court to determine whether Ella financed her purchase of the Anchorage properties by means of property acquired during the marriage. *See* AS 25.24.-160(a)(4). If she did not—by having assumed a mortgage or obtained a loan on which she makes payments from her post-separation earnings, for example—then the properties should remain hers. *See id.* at 1171–72; *Schanck v. Schanck*, 717 P.2d 1, 3 (Alaska 1986).

7. Conspiciously absent from the property division which we set aside herein was considera-

tion of Ella's retirement benefits from the school district, a determination of the source and amount of cash savings accumulated during the marriage, and valuations of the Texas and Anchorage properties. The superior court should remedy these omissions in particular on remand. (Even if the court finds the Anchorage properties to be Ella's, *see supra* note 6, their value is relevant to the required balancing of the parties overall financial circumstances.)

8. In determining an equitable division on remand, the superior court of necessity will undertake valuation of the property subject to division. In our view, the proper date for such valuation in this case is September 1975, the date of the parties' separation. *See Hunt*, 698 P.2d at 1172 (no abuse of discretion in trial court using time of separation rather than time of divorce to value assets); *cf. Schanck*, 717 P.2d at 3 ("Each case must be judged on its facts to determine when the marriage has terminated as a joint enterprise.").