NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| HERBERT D. JOHNSON, | ) | |
| | ) | Supreme Court No. S-17357 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-18-01721 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| LYNN M. JOHNSON, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1778 – July 22, 2020 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Herbert D. Johnson, pro se, Wasilla, Appellant. Taylor Thompson, Law Office of Darryl L. Thompson, P.C., Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I. INTRODUCTION

A man challenges the superior court's award of the marital home in a divorce, claiming that the court erred by awarding it to his ex-wife. Because there is no clear error in the findings related to the home and no abuse of discretion in the court's equitable division of the marital estate, we affirm the court's decision.

---

\* Entered under Alaska Appellate Rule 214.

## II. FACTS AND PROCEEDINGS

### A. Facts

Herbert and Lynn Johnson met in 1997. They have two minor children.[1] They were together for nearly 15 years before they married.

When their oldest child was born the couple agreed that Herbert would remain at home "because [the cost of] childcare was just outrageous" and Lynn would be the "breadwinner." They did not decide how long this arrangement would continue and their trial testimony revealed that they had different views on the subject. Lynn testified that she expected him to begin a career once the youngest child had enrolled in first grade. But Herbert testified that when he attempted to work, Lynn was unsupportive.

Before they married Herbert and Lynn discussed buying a new home. They were advised that they were unlikely to qualify for a mortgage as an unmarried couple but that if they were married, their combined income and credit score would improve their chances. A few months after they married in March 2011 they were approved for a mortgage for a home in Wasilla.

In 2014 Lynn took on a second job to supplement her earnings from her long-time position at Safeway. Lynn held both jobs, often working 50 hours per week, until she left Safeway in July 2018. Herbert remained at home, primarily responsible for child care, while also studying for his high school diploma. Herbert also enrolled in, but did not complete, a training course to become a commercial truck driver.

---

[1] Their third child is no longer a minor and each has children from a previous relationship.

## B. Proceedings

In May 2018 Lynn filed for divorce, seeking primary physical and sole legal custody of their two minor children. Herbert filed an answer in July, opposing Lynn's custody proposal and seeking shared custody. Lynn and Herbert later reached an agreement for shared custody, which the court accepted. Trial was held on November 29.

Their marital estate contained little beyond the marital home. The court found, and neither party disputed, that the marital estate contained personal property valued at $26,650; Lynn's retirement accounts valued at $11,696; and marital debts totaling $174,769.[2]

Lynn argued that she should be awarded the marital home because the mortgage was solely in her name and she alone had made all the payments on it. Lynn urged the court to value the home at $165,000 because of damage to the chimney, walls, carpets, and bathrooms, even though the home and underlying land were appraised at $191,900 in 2018. Herbert agreed with her proposed value, but argued that the house should be sold and its equity divided between them.

Herbert argued that Lynn would not have been able to qualify for the home without his credit score. He also testified that they had agreed Lynn would pay the mortgage while he remained at home to take care of their children. And he acknowledged that he had difficulty finding and keeping jobs due to his criminal record.

The court issued its decision on the record at the close of trial. The court determined that the marital estate, including Lynn's retirement accounts, should be

---

[2] Due to mortgage payments made while the litigation proceeded, the marital debt had been reduced to $173,477 by the time the court issued its findings of fact and conclusions of law.

divided equally, and it adopted the parties' agreement for equally shared custody and that each parent have equal access to the children.

Turning to the house, the court stated that any benefit from dividing the equity from selling the home would be outweighed by the harm that would result from uprooting the children. The court noted that in light of the children's best interests, Lynn's ability to pay the mortgage, and the equity value, "it doesn't make sense to require the house to be sold." It therefore found it better for Lynn "to keep the house and then divide the rest of the property accordingly to achieve as equitable of a division as possible."

Herbert filed a Motion for Reconsideration of the court's allocation of the house to Lynn. Herbert reiterated that his credit was used to purchase the home and that "[t]he kids love and will miss the[ir] father and want him there for every holiday and that the [court] didn't consider the kids['] feeling[s]." The next day the court denied the motion, noting that Herbert "does not argue that the [c]ourt has misapplied, overlooked, or failed to consider any legal authority," and that "[w]hen awarding the marital home, . . . the minor children's feelings" are not a factor under AS 25.24.160.[3]

In early January 2019 the court issued its Decree of Divorce and written Findings of Fact and Conclusions of Law. Herbert and Lynn were each awarded their own personal property and half of Lynn's retirement accounts. The court determined that Lynn was entitled to an offset of $8,945 for expenses, but noted that Lynn "agreed to waive" this offset as long as she was awarded the marital home and her car. The court also determined that Lynn would be responsible for the home mortgage, the loan on her

---

[3]     *See* AS 25.24.160(a)(4) (outlining factors court must consider in property division).

vehicle, and their children's debts for a total of $167,310. The court allocated Herbert $6,166 in debts that were in his name.

The court spelled out the factors that led it to award the home to Lynn. The court first found that Herbert "ha[d] been voluntarily underemployed for the past number of years, and [Lynn] ha[d] financially supported the family in every respect," despite the fact that Hebert "ha[d] been capable of working." The court then determined that because Herbert was "voluntarily underemployed and . . . unable to pay the monthly mortgage, and because [Lynn] has a greater ability to pay for the home," Lynn would be allocated the marital home, which the court valued at $165,000.

Herbert appeals, challenging only the award of the marital home to Lynn.

## III.   STANDARD OF REVIEW

"We review the trial court's judgment in property division cases for abuse of discretion as provided by AS 25.24.160(a)(4). Property division involves a three step process in which the trial court 'determin[es] what property is available for distribution, assess[es] its value, and allocat[es] it equitably.' "[4]

"We review the third step, 'the equitable allocation of property,' for abuse of discretion. A property division is an abuse of discretion if it is clearly unjust; it will also be set aside if it is based on a clearly erroneous factual finding or mistake of law."[5]

---

[4]    *Partridge v. Partridge*, 239 P.3d 680, 685 (Alaska 2010) (first citing *Walker v. Walker*, 151 P.3d 444, 447 (Alaska 2007); then quoting *Forshee v. Forshee*, 145 P.3d 492, 497 (Alaska 2006)).

[5]    *Wagner v. Wagner*, 386 P.3d 1249, 1251 (Alaska 2017) (first quoting *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014); then citing *Jones v. Jones*, 942 P.2d 1133, 1136 (Alaska 1997)).

## IV.  DISCUSSION

"Alaska Statute 25.24.160(a)(4) governs the division of property in divorce."[6]  The statute provides that property "acquired only during marriage" must be divided "in a just manner and without regard to which of the parties is in fault."[7]  It states that "the division of property must fairly allocate the economic effect of divorce"[8] based on the consideration of the *Merrill* factors,[9] codified as AS 25.24.160(a)(4).[10]  In

---

[6]      *Hockema v. Hockema*, 403 P.3d 1080, 1088 (Alaska 2017).

[7]      AS 25.24.160(a)(4).

[8]      *Id.*

[9]      *See Fletcher v. Fletcher*, 433 P.3d 1148, 1151 (Alaska 2018) (citing *Merrill v. Merrill*, 368 P.2d 546, 547 n.4 (Alaska 1962)).

[10]     AS 25.24.160(a)(4) factors include:

> (A) the length of the marriage and station in life of the parties during the marriage;
>
> (B) the age and health of the parties;
>
> (C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experience, length of absence from the job market, and custodial responsibilities for children during the marriage;
>
> (D) the financial condition of the parties, including the availability and cost of health insurance;
>
> (E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

(continued...)

*Hockema v. Hockema*, however, we stated that "[t]hese factors are not exhaustive, and the [superior] court is not required to enter findings on each factor."[11] The superior court "has broad latitude in dividing marital property"[12] and its findings "need only be sufficient to indicate the basis of the court's conclusion."[13] "[W]e generally will not reevaluate the merits of the property division."[14] "An even division of the property is presumptively just,"[15] and we will vacate a distribution as an abuse of discretion only if the allocation is clearly unjust.[16]

---

[10]     (...continued)
(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;

(G) the circumstances and necessities of each party;

(H) the time and manner of acquisition of the property in question; and

(I) the income-producing capacity of the property and the value of the property at the time of division[.]

[11]     403 P.3d at 1088.

[12]     *Id.* (citing *Bussell v. Bussell*, 623 P.2d 1221, 1222 (Alaska 1981)).

[13]     *Id.* (citing *Oberhansly v. Oberhansly*, 798 P.2d 883, 884-85 (Alaska 1990)).

[14]     *Id.* (quoting *Dundas v. Dundas*, 362 P.3d 468, 477 (Alaska 2015)).

[15]     *Pfeil v. Lock*, 311 P.3d 649, 652-53 (Alaska 2013) (quoting *Berry v. Berry*, 978 P.2d 93, 96 (Alaska 1999)).

[16]     *Hansen v. Hansen*, 119 P.3d 1005, 1009 (Alaska 2005) (citing *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988)).

When dividing marital property a court must be guided by the *Merrill* factors.[17] The court is permitted to consider additional factors,[18] and is not required to make findings for every factor.[19] But the court's factual findings must be "sufficiently detailed and explicit" to indicate the basis for its property division.[20]

As noted, "[p]roperty division involves a three step process in which the trial court 'determin[es] what property is available for distribution, assess[es] its value, and allocat[es] it equitably.' "[21] Herbert and Lynn do not dispute that their home is marital property[22] or that the court valued it appropriately[23] and the court did not clearly err by agreeing with them. We therefore focus on Herbert's claim that the court abused its discretion when it awarded the home to Lynn.

At the close of trial and in its written Findings of Fact and Conclusions of Law, the superior court indicated that it was awarding the marital home to Lynn for three

---

[17]     *See* AS 25.24.160(a)(4).

[18]     *Young v. Lowery*, 221 P.3d 1006, 1014 (Alaska 2009).

[19]     *Nicholson v. Wolfe*, 974 P.2d 417, 422 (Alaska 1999); *accord Lang v. Lang*, 741 P.2d 1193, 1195 (Alaska 1987).

[20]     *Sandberg v. Sandberg*, 322 P.3d 879, 890 n.39 (Alaska 2014) (quoting *Lang*, 741 P.2d at 1195).

[21]     *Partridge v. Partridge*, 239 P.3d 680, 685 (Alaska 2010) (alterations in original) (quoting *Forshee v. Forshee*, 145 P.3d 492, 497 (Alaska 2006)).

[22]     We presume that " 'all assets acquired by the parties during their marriage are marital property' except for gifts and inheritances." *Beals v. Beals*, 303 P.3d 453, 460 (Alaska 2013) (quoting *Johns v. Johns*, 945 P.2d 1222, 1255 (Alaska 1997)).

[23]     The superior court accepted the parties' agreement that the value of the marital home was $165,000, and both Herbert and Lynn's testimony supported the agreed-upon value.

reasons. First, because the home equity was insignificant, the court believed that any potential benefit from selling it was outweighed by the likely disruption of relocating the children. Second, the court noted that Herbert was "voluntarily unemployed" and "unable to pay the monthly mortgage," while Lynn had been steadily employed and could afford to pay the mortgage. Finally, the court found that in light of the post-separation offsets — which would require Herbert to pay Lynn $8,945 for living expenses since the date of separation — awarding the marital home to Lynn was "fair" and "equitable."

Herbert maintains that the superior court did not consider his contribution in obtaining the marital home. Herbert is correct that the manner of acquisition is a consideration under the *Merrill* factors.[24] But the superior court's decision was well supported by other factors, including who could maintain the home and what course of action would be in the children's best interest. The superior court properly weighed the *Merrill* factors, especially the parties' earning capacities,[25] the parties' financial conditions,[26] and "the desirability of awarding the family home . . . to the party who has primary physical custody of [the] children."

The court also divided the property in as equitable a manner as was feasible under the circumstances. Herbert was awarded $11,300 in personal property, $5,848 in Lynn's retirement, $8,945 in waived post-separation offset credits owed to Lynn,[27] and

---

[24] *See* AS 25.24.160(a)(4)(H) (noting that courts may consider "the time and manner of acquisition of the property in question").

[25] *See* AS 25.24.160(a)(4)(C).

[26] *See* AS 25.24.160(a)(4)(D).

[27] *See Beal v. Beal*, 209 P.3d 1012, 1023 (Alaska 2009) (noting that the court has discretion to determine whether to give paying spouse "dollar-for-dollar credit" for

(continued...)

minimal personal debt of $6,166. Herbert's net award was $19,926, 51.34% of the total division. Lynn was awarded the marital home valued at $165,000, the car valued at $15,350, half of her retirement at a value of $5,848, but also $167,310 in total debt. Lynn's net award was $18,887, 48.66% of the total division.

The court's division was fair, reasonable, and well supported by the record. It did not abuse its discretion by awarding Lynn the marital home.

## V.    CONCLUSION

Because the superior court did not abuse its discretion by awarding the marital home to Lynn, we AFFIRM the court's decision.

---

[27]    (...continued)
post-separation payments).