Albert F. MONSMA, Appellant,

v.

Zola Emilie MONSMA, Appellee.

No. 4761.

Supreme Court of Alaska.

Oct. 24, 1980.

Valerie M. Therrien, Fairbanks, for appellant.

Lyle R. Carlson, Fairbanks, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

OPINION

PER CURIAM.

Albert F. Monsma appeals from the superior court's decree which was entered in his divorce action against his wife, Zola Emilie Monsma. The Monsmas were married in 1963, and have two daughters, born in 1967 and 1970. During the course of the marriage, Zola developed a severe alcohol problem. Albert has expended approximately $24,000 in attempts to rehabilitate Zola. Albert is employed by the federal government as a telephone supervisor at Ft. Wainwright, and earns around $3,000 a month before taxes. Zola is unemployed; according to Albert she has worked only sporadically since the marriage, and has never contributed to the upkeep of the family.

Albert filed for divorce in March, 1977. Both parties initially sought custody of the children. By stipulation, Albert was eventually given custody, and Zola was not obligated to pay child support. The parties could not agree, however, on a division of their marital property. Following the trial, the superior court granted the division of property proposed by Zola, with one major change: most of the marital assets were awarded to Albert. However, he was required to make a cash payment to Zola computed as follows: (1) One–half of the value of all of the marital assets, less (2) the value of the marital assets awarded to Zola, and less (3) the amount of $17,900 representing $100 per child per month until each reaches eighteen years old, since custody of the children was given to Albert. This resulted in Zola receiving the tangible assets in the amount of $28,075, together with attached payment from Albert of $10,397.

■ Albert's primary contention in this appeal is that the division of assets is inequitable. We cannot agree that the superior court abused its discretion in effectively awarding Zola half of those assets.[1] The

1. *Malone v. Malone*, 587 P.2d 1167 (Alaska 1978); *Bailey v. Bailey*, 567 P.2d 315 (Alaska 1977).

superior court properly took into account Albert's earnings, Zola's lack of any real earning potential, and the nearly fifteen–year duration of the marriage. *See Merrill v. Merrill,* 368 P.2d 546, 547 n.4 (Alaska 1962). We find no support in the record for Albert's contention that the superior court did not consider Albert's substantial past payments for Zola's medical treatment in arriving at its property and support rulings. We also find unpersuasive appellant's complaint that the cash payments he must make to Zola place an "impossible financial burden" on him. The superior court's order may indeed require Albert to alter his lifestyle, and even necessitate the sale of some of his real estate holdings. Our statement in *Allen v. Allen,* 554 P.2d 393, 395–96 (Alaska 1976), responds to this concern:

> Appellant next argues that the judgment has imposed an impossible financial burden on him. Of course, all divisions of property are likely to result in some financial burden. Our task is to determine whether in this case the judge abused his discretion by imposing a financial burden which is "clearly unjust." *Courtney v. Courtney, supra.* Appellant must demonstrate such injustice to cause us to reverse a decision by the trial court. Mr. Allen is certainly in a position to alleviate his monthly payments by refinancing or liquidating assets, such as the van and electronic equipment, or by trading down to a less expensive vehicle than his Cadillac. It is not unreasonable to expect a party to a divorce to have to reorganize financially, at least on a short term basis. While the result in this case may be harsh, as between the parties we cannot say that it is clearly unjust.

Similarly, appellant may face some financial burdens, but he can liquidate some of his assets. Under the facts of this case, we hold that the property division is not clearly unjust.

■ Albert also attacks the superior court's classification of his vested federal civil service retirement fund contribution as a marital asset. He claims this is contrary to the recent decisions in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (Railroad Retirement Act) and *Cose v. Cose,* 592 P.2d 1230 (Alaska 1979), *petition for cert. filed,* —— U.S. ——, 100 S.Ct. 2149, 64 L.Ed.2d 786 (1980) (military retirement pay). We find this contention to be without merit.

*Hisquierdo* involved a conflict between state and federal law regarding the allocation of retirement benefits under the Railroad Retirement Act. The Supreme Court[2] found that the state marital property rule contravened the intention of Congress and held that under the Supremacy Clause, the federal statutory scheme pre–empts state law.

Accordingly, in *Cose* we attempted to ascertain whether Congress intended military retirement pay to be classified as a marital asset. We considered several sections of the military retirement statutes:

> Some clues as to Congressional intent can be gathered from the statutes and pertinent background materials. Although the statutes are silent as to rights of dependents of the retiree, they do include a method by which the serviceman can use a portion of his retired pay to purchase an annuity for his widow. 10 U.S.C. §§ 1447–1455. Under this plan only a widow, not a surviving ex–wife, is eligible for benefits. Moreover, when the wife can no longer be a beneficiary because of divorce, deductions from retired pay cease. 10 U.S.C. § 1434(c). In the passage of the law setting up this plan, provisions which would have protected ex–wives were stricken from the law before its passage. 118 Cong.Rec.S. 29810–12 (1972). In this respect Congress purposefully excluded ex–wives from bene-

---

**2.** The Supreme Court placed great emphasis on 45 U.S.C. § 231m, part of the Railroad Retirement Act:

> Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supple-

mental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated. . . .

fitting under the plan. One searches the statutes in vain for any indication that Congress has ever treated retired pay as property or has intended retired pay to be divisible upon divorce.

592 P.2d at 1232 (footnote omitted).

In contrast to *Cose* and *Hisquierdo*, Congress in 1978 specifically added a provision to the civil service retirement laws concerning retirement payments as marital property:

> Payments under this subchapter which would otherwise be made to an employee, Member, or annuitant based upon his service shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court–approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation. Any payment under this paragraph to a person bars recovery by any other person.

5 U.S.C. § 8345(j)(1). Since there is no conflict between Alaska marital property rules and the federal statute, we find no reason to overrule the superior court's classification of Albert's federal civil service retirement benefits as a marital asset.[3]

■ One point raised by Albert, however, does require a remand of this case to the superior court for further proceedings. The superior court failed to allocate several existing marital debts, especially bills outstanding for Zola's medical treatment.

AFFIRMED in part, and REMANDED for further proceedings in regard to the one issue of allocation of marital debts.[4]

BOOCHEVER, J., not participating.

---

[3]. The rationale for considering retirement benefits as marital property was well expressed by Justice Matthews in his concurring opinion in *Cose v. Cose*, 592 P.2d 1230, 1232 (Alaska 1979).

[4]. We have examined appellant's other specifications of error and have concluded that they are lacking in merit.