Kenneth H. LAING, Appellant,

v.

Marla M. LAING, Appellee.

S–1357.

Supreme Court of Alaska.

Aug. 21, 1987.

William T. Ford, Law Offices of William T. Ford, Anchorage, for appellant.

Peter F. Mysing, Kenai, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This appeal challenges a marital property division. The husband challenges generally the trial court's finding that the wife was entitled to more than fifty percent of the marital assets. He also contests the court's allocation of certain assets and credits. We affirm the trial court's findings and conclusions except with regard to its disposition of the husband's nonvested pension, which we conclude cannot be presently divided. We remand the case with instructions that the trial court redetermine the property division in a manner consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kenneth and Marla Laing were married on November 16, 1964. At the time of the

marriage, Marla lived in her own furnished home, the equity in which was approximately $15,000. She also had benefits from her first husband's death which amounted to approximately $10,000 and a two-year old car worth approximately $500. Throughout their twenty-year marriage, Marla was responsible for most of the housework and child care, even during approximately ten years she was employed outside the home.

Kenneth apparently had no substantial assets at the time of the marriage. He was employed all but a few months during the marriage.

At the time of divorce, Marla was 49 years old and employed as a dental office receptionist/clerk. She earned $18,750 gross income the year before trial. Kenneth was 50 years old and had been employed at Union Chemicals (now UNOCAL) for seven and a half years. The trial court found that he had earned approximately $40,000 by August 1985; his income in 1984 was $61,471.43.

The parties stipulated to the value of most of the marital assets. The only items in dispute were certain household goods not at issue in this appeal.

Marla presented evidence that she suffered from arthritis in both hands, which interfered with her work. She also presented some evidence that she might have multiple sclerosis (MS). She called an internist who testified as to general symptoms of, prognosis for and difficulties in diagnosing patients with MS, but he had not examined Marla and offered no opinion about her condition. Marla did, however, testify to having many of the symptoms associated with MS.

After applying the *Merrill*[1] factors, the trial court awarded $221,444 of the parties' assets to Marla and $158,733 to Kenneth. The trial court also ordered Kenneth to make payments for almost two years on the real property awarded to Marla. Kenneth challenges this award on the ground that it was an improper disguised alimony award.[2]

## II.  DISCUSSION

### A.  Standard of Review.

■ AS 25.24.160(a)(4) grants the trial court broad discretion in fashioning a property division in divorce actions. The statute empowers the trial court to divide all property acquired during the marriage and to invade separate property of either spouse if a balancing of the equities so requires.[3] This court will not disturb a division made within the parameters of the statute unless it is clearly unjust. *Burcell v. Burcell*, 713 P.2d 802, 804 (Alaska 1986); *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983).

On the other hand, whether the trial court applied the appropriate legal standards in exercising its broad discretion is a question of law regarding which this court may substitute its independent judgment on appeal. *Wanberg*, 664 P.2d at 570. We have established a three-stage procedure to be followed by a trial court in fashioning a property division. The trial court must

---

1. *Merrill v. Merrill*, 368 P.2d 546, 547 n. 4 (Alaska 1962).

2. Kenneth also seems to indicate dissatisfaction with the trial court's allocation of his profit sharing and stock option plans. However, this issue is not discussed in the argument section of either his opening or reply briefs. Arguments given only cursory treatment in the briefs will not be considered by this court. *Craig Taylor Equipment v. Pettibone Corp.*, 659 P.2d 594, 596 n. 1 (Alaska 1983).

3. AS 25.24.160 provides in part:
    In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide
    .     .     .     .     .

(4) for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities between the parties requires it; and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or convey any of their real or personal property to the other party; ...
Prior to 1983, this statute was numbered AS 09.55.210. In 1985, the subsections were renumbered; this subsection was formerly subsection (6).

first determine what property is available for division. It must then determine the value of that property. Finally, it must determine how most equitably to divide that property. *Id.* In making this determination, the trial court should consider, though not necessarily exclusively or exhaustively, the factors set out in *Merrill v. Merrill*, 368 P.2d 546, 547 n. 4 (Alaska 1962). *See also Brooks v. Brooks*, 677 P.2d 1230, 1233 (Alaska 1984).

With the exception of Kenneth's retirement plan, the parties in this case stipulated to the characterization of the divided assets as marital property. The parties also stipulated to the value of most of these assets. The trial court recognized the stipulation and determined the value of all assets on which the parties were unable to agree. As will be discussed in more detail below, the trial court then made findings in accordance with the *Merrill* factors. The trial court applied the proper general legal standards, leaving only four questions for this court's review: 1) did the trial court abuse its broad discretion in awarding Marla a greater share of the marital assets?; 2) did the court improperly credit Marla for contribution to the marriage of premarriage assets?; 3) did the court err in ordering Kenneth to make loan payments on real property awarded to Marla?; and 4) did the court err in its division of Kenneth's nonvested retirement plan?

**B. Disparate Disposition of Marital Assets.**

The principal factors to be weighed by the trial court in making a property division are:

(1) the ages of the parties;
(2) their earning capacity;
(3) the duration of the marriage;
(4) the conduct of the parties during marriage;
(5) the parties' "station in life;"
(6) the circumstances and necessities of each;
(7) their health;
(8) their financial condition;
(9) the time and manner of acquisition of the property in question;
(10) the value of the property at the time of division; and
(11) the income-producing capacity of the property.

*Merrill*, 368 P.2d at 547 n. 4; *Brooks*, 677 P.2d at 1233. This list is not exhaustive and the trial court may consider other factors it deems relevant. *Brooks*, 677 P.2d at 1233. Nor must the court make findings on all of the *Merrill* factors. *Burcell*, 713 P.2d at 805. The findings must, however, provide a sufficient basis for the conclusion reached. *Brooks*, 677 P.2d at 1233.

The trial court awarded Marla approximately 58.25% of the equity in the marital assets. It found this division to be equitable based on Marla's "medical problems, the fact [that] the marriage lasted over 20 years, the comfortable standard of living achieved by the parties, the fact that the wife is now 49 years old and the fact that the husband's earning capabilities are substantially greater than the wife's." The court thus made express findings on factors 1, 2, 3, 5, 7, 8 and 10 listed above.

Kenneth challenges the court's conclusion on the ground that it did not consider the income producing capacity of certain real property and that its findings with regard to Marla's health were not supported by the evidence.

**1. Failure to Consider Income Producing Capacity.**

Kenneth asserts for the first time on appeal that the three lots in the Soldotna subdivision that were awarded to Marla contain gravel and would likely be developed into a gravel pit if sold. Kenneth argues that this would have a "devastating effect" on the value of the adjacent property where the house awarded to Kenneth is located.

This point was not raised at trial and therefore cannot, as a general rule, be raised here to obtain a reversal. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). Kenneth does not present any reason for departure from this general rule, nor is any such reason

apparent from the record. Moreover, the parties stipulated to the value of the lots and the house. Whether the stipulated value of the house was reached after consideration of the potential impact of the surrounding lots being developed as a gravel pit cannot be determined from the record. The trial court did not abuse its discretion in relying on the parties' stipulation to the value of the respective properties involved. In any event, it seems clear that Kenneth has waived the point.[4]

2. Marla's health.

■ Kenneth asserts that Marla did not produce sufficient, admissible evidence of her health problems to warrant the trial court's findings. We can overturn a trial court's finding of fact only when it is clearly erroneous. Alaska R.Civ.P. 52(a). Findings are clearly erroneous if, based on the record as a whole, this court is "left with the definite and firm conviction that a mistake has been made." *Burcell,* 713 P.2d at 804.

Marla presented documentary evidence including letters and notations by various doctors regarding her possible multiple sclerosis.[5] While not conclusive, the exhibits corroborate Marla's testimony that she suffered certain symptoms and refer to test results supporting a diagnosis of MS.

Marla also presented testimony of a medical doctor about symptoms common to and the prognosis of MS patients. This doctor also testified that MS is very difficult to diagnose and that a patient must be repeatedly tested over time to enable a conclusive diagnosis. Although he had not examined Marla, the symptoms he discussed as supporting a diagnosis of MS corresponded with Marla's description of her symptoms.

Marla also testified that she has arthritis in both hands and that this made her work very difficult and that it made it impossible to work as a dental assistant any longer. She also stated that her hands were "gnarled" by the disease—a claim the trial court could presumably verify by its own observation. She produced an x-ray report stating that an examination revealed "osteoarthritic changes" in the joints of her fingers. Finally, Kenneth himself testified that she complained of pain in her hands throughout the time of their marriage.

Kenneth produced no contrary evidence regarding either the MS or the arthritis. The trial court found that Marla had "shown, by at least a preponderance of the evidence, a strong likelihood that she suffers from multiple sclerosis and arthritis," and that these problems placed the prospect of her continued employment in doubt. Based on a review of the record as a whole, we cannot say that this finding was clearly erroneous.

■ The trial court did not abuse its discretion in awarding Marla a greater share of the marital property based on its consideration of the *Merrill* factors, given her health problems and their probable effect on her earning capacity.

C. Award of Specific Items.

Kenneth also challenges several specific items in the trial court's award. He claims it was error for the court to credit Marla for her contribution of premarital assets, to order Kenneth to make loan payments on real property awarded to Marla, and to distribute Kenneth's nonvested pension.

1. Credit for Contribution of Premarital Assets.

Kenneth claims that giving Marla a credit for contribution of premarital assets

---

4. By this ruling, we do not intend to foreclose Kenneth from making a proper evidentiary showing regarding the relative values of the Soldotna properties on the remand that is necessitated by our resolution of the pension issue, if he is able.

5. At trial, Kenneth's attorney objected to admission of this evidence on the ground that it was hearsay and no custodian of records had been produced to lay the foundation for admission under the business records exception. The trial court sustained the objection but granted Marla leave to supplement the record with foundation evidence. She submitted foundational affidavits of the respective custodians of records, and the motion to supplement the record was granted by this court on October 20, 1986. These affidavits set out the facts required to lay the foundation for admission of the exhibits as business records. Alaska R.Evid. 803(6).

amounts to giving her a double recovery. He claims that any separate property she brought to the marriage has been commingled, has been treated as joint property and has benefited both spouses. "In effect, Mrs. Laing is enjoying the benefits of this [$25,500] twice; once during their twenty year marriage and now through divorce in her receipt of most of the Laing's marital assets." This argument apparently assumes that Marla's $25,500 contribution was something that could be "enjoyed" only once before it is used up. In reality at least $15,000 was invested in various real properties which presumably appreciated in value over the twenty-year marriage.

■ Kenneth correctly argues that where the parties by their actions during marriage have demonstrated their intent to treat certain separate property as joint holdings, a court will consider the property to be a marital asset. *Carlson v. Carlson*, 722 P.2d 222, 224 (Alaska 1986). But, "treating assets as marital property" means only that the property is "available for equitable division under AS 09.55.-210(6)." [6] *Wanberg*, 664 P.2d at 571. Kenneth himself testified that the proceeds from the sale of Marla's house were eventually used to purchase property here in Alaska. The trial court did not treat the Alaska property as Marla's separate property, it considered all of this property to be available for distribution. This is all that is required by *Wanberg*.

■ This court has often stated that the criteria listed in *Merrill* are not exhaustive and the trial court "is free to consider additional factors which may be relevant in a particular case." *Wanberg*, 664 P.2d at 575 n. 22; *see also Burcell*, 713 P.2d at 805 n. 3; *Brooks*, 677 P.2d at 1233. A spouse's contribution of substantial separate property to the marriage may be such a relevant factor. In this case, the court did not make a dollar for dollar credit for Marla's contribution, rather it awarded her a partial credit which was taken care of by the uneven property division and the order that Ken-

neth make loan payments on property awarded to her. Given the equities of the case, this award was not unjust.

2. Order Requiring Kenneth to Make Payments on Property Awarded to Marla.

■ Kenneth asserts that the order requiring him to make payments on property awarded to Marla was in effect an order requiring him to pay alimony. The trial court stated that this order was based in part on a recognition of Marla's contribution of premarital assets. As discussed above, such a credit is proper.

Despite the trial court's statement that "no spousal support is awarded because of the [disparate] property division," the order that Kenneth make loan payments for a year is indeed equivalent to an award of temporary alimony. Although alimony is not favored, it can be awarded when "just and necessary." AS 25.24.160(3). This court has held that the same *Merrill* factors used when making a property division provide guidance in determining whether an award of alimony is proper. *Messina v. Messina*, 583 P.2d 804 (Alaska 1978). In this case, the court reviewed the *Merrill* factors and determined that a greater share of the marital assets should be awarded to Marla. The record indicates that Marla's salary would not cover the payments due on the property awarded to her. The court ordered Kenneth to make the payments for almost two years. This was to ensure that the property it awarded to Marla would not be lost in foreclosure before she had a chance to reorganize her financial affairs in accordance with her changed circumstances. The award was "of limited duration and for a specific purpose." *Bussell v. Bussell*, 623 P.2d 1221, 1224 (Alaska 1981). In these circumstances, the support award appears both just and necessary and the trial court did not abuse its discretion. *Messina*, 583 P.2d at 804–05.[7]

---

**6.** The relevant subsection is currently designated AS 25.24.160(a)(4).

**7.** We note that on remand the trial court may well divide the real property differently, in

### 3. Kenneth's Nonvested Pension.

The trial court awarded Kenneth his pension with a present value of $27,000 and awarded Marla offsetting marital assets. Kenneth challenges the award on the grounds that there was insufficient evidence to support the $27,000 figure and that Marla's share should not have been awarded in a lump sum. We first address the issue whether the trial court properly characterized Kenneth's nonvested pension as marital property.

#### a. Characterization as Marital Property.

■ This court has considered pensions in the equitable division of marital assets. *See, e.g., Morlan v. Morlan,* 720 P.2d 497, 498 (Alaska 1986) ("pension rights should generally be awarded to the employee spouse if there is other marital property of appropriate worth which can be awarded to the non-employee spouse"); *Chase v. Chase,* 662 P.2d 944, 946 (Alaska 1983) (trial court has discretion to consider military retirement in effecting an equitable and just property division); *Monsma v. Monsma,* 618 P.2d 559, 561 (Alaska 1980) (federal employee retirement benefits statute did not preempt state marital property law so that trial court correctly considered federal benefits to be a marital asset); *Cose v. Cose,* 592 P.2d 1230, 1233 (Alaska 1979) (Matthews, J., concurring) (stating that while existing federal law excluded Railroad Retirement benefits from characterization as marital property subject to division, "[a]s a matter of state law it is clear that retirement pay must be considered in dividing marital property.").

Alaska thus follows the majority rule that "vested" pension and retirement benefits are subject to division by a divorce court. Annotation, *Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses,* 94 A.L.R.3d 176, 182 [hereafter Annot., *Pension Rights*]. Whether the majority rule can also be applied with regard to Kenneth's *nonvested*[8] pension rights is a question of first impression in Alaska. Jurisdictions are split on this issue. Those in which nonvested pensions are held not to be divisible marital property rely primarily on the notion that such interests are too speculative and cannot be said to constitute a property right. *See, e.g., Wilson v. Wilson,* 409 N.E.2d 1169, 1178 (Ind.App.1980); *Ratcliff v. Ratcliff,* 586 S.W.2d 292, 293 (Ky.App.1979); *cf. Copeland v. Copeland,* 91 N.M. 409, 575 P.2d 99, 101–02 (1978) (although pension there at issue was vested, court stated in dicta that an unvested pension "cannot be said to constitute a property right because the benefits rest upon the whim of the employer.").

The trend, however, is to consider pensions as marital property regardless of whether they have vested. *See generally* 1 J. McCahey, *Valuation and Distribution of Marital Property* § 18.03[3], at 18–29 (1985). *See, e.g., Van Loan v. Van Loan,* 569 P.2d 214, 215–16 (Ariz.1977); *In re Marriage of Gillmore,* 29 Cal.3d 418, 174 Cal.Rptr. 493, 495, 629 P.2d 1, 3 (Cal.1981); *In re Marriage of Hunt,* 78 Ill.App.3d 653, 34 Ill.Dec. 55, 62, 397 N.E.2d 511, 518 (1979); *Ohm v. Ohm,* 49 Md.App. 392, 431 A.2d 1371, 1375 (1981); *Janssen v. Janssen,* 331 N.W.2d 752, 754 (Minn.1983); *Weir v. Weir,* 173 N.J.Super. 130, 413 A.2d 638, 640 (1980); *Damiano v. Damiano,* 94 A.D.2d 132, 463 N.Y.S.2d 477, 481 (1983); *Cearley v. Cearley,* 544 S.W.2d 661, 666 (Tex.1976); *Wilder v. Wilder,* 85 Wash.2d 364, 534 P.2d 1355, 1357 (1975); *Leighton v. Leighton,* 81 Wis.2d 620, 261 N.W.2d 457, 464 (1978); *see contra, e.g., Wilson v. Wilson,* 409 N.E.2d 1169, 1178 (Ind.App. 1980); *Ratcliff v. Ratcliff,* 586 S.W.2d 292,

---

which case it must also reevaluate the propriety of this support award.

**8.** The term "nonvested" is used here to mean that if Kenneth's employment were to terminate immediately he would be entitled to no future retirement or pension benefits. The term is not used, as some courts have done, to indicate merely that the pension rights have not ma-

tured. When a pension or retirement benefits plan is vested but not matured, an employee is absolutely entitled to benefits, though he is not entitled to actual payments until some future date. *See Copeland v. Copeland,* 91 N.M. 409, 575 P.2d 99, 101–02 (1978); Annot., *Pension Rights,* 94 A.L.R.3d at 204–22, 232–44.

293 (Ky.App.1979); *Boyd v. Boyd,* 116 Mich.App. 774, 323 N.W.2d 553, 556–57 (1982).

Supporting this trend is the reasoning that the contingent nature of a nonvested pension presents simply a valuation problem, not bearing on the non-employee spouse's entitlement to a just share of the marital assets. *See, e.g., In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 639, 544 P.2d 561, 567 (1976); *Wilder v. Wilder,* 534 P.2d at 1358; 1 McCahey, *supra* p. 16, § 18.03[3] at 18–28. Pension benefits are generally viewed as deferred compensation for services rendered and the employee spouse's right thereto is a contractual right. *Johnson v. Johnson,* 131 Ariz. 38, 638 P.2d 705, 708 (1981); *Brown,* 126 Cal.Rptr. at 637, 544 P.2d at 565. "The fact that a contractual right is contingent upon future events does not degrade that right to an expectancy." *Brown,* 126 Cal. Rptr. at n. 8, 544 P.2d at 566 n. 8.

One commentator provides another persuasive reason for characterizing even nonvested pensions as divisible marital assets:

> The non-employee spouse's contribution to the pension asset is exactly the same whether the pension be labeled a mere *expectancy,* or a *contingent future interest.*

L. Golden, *Equitable Distribution of Property* 172 (1983) (emphasis in original).

We are persuaded that the contingencies that may prevent the employee spouse from ever collecting his or her nonvested pension should not bar the non-employee spouse from recovering a share if the pension is in fact paid out. Indeed, a contrary rule would frustrate the statutory command that Alaska courts effect a "just division of the marital assets." AS 25.24.-160(a)(4). This obviously requires that the trial court consider the financial circumstances of each party. *Cose,* 592 P.2d at 1233 (Matthews, J., concurring), *cited with approval in Monsma,* 618 P.2d at 561 n. 3; *see generally Merrill,* 368 P.2d at 547–48 n. 4; *Malone v. Malone,* 587 P.2d 1167 (Alaska 1978). It would be wholly inconsistent with this policy to ignore the existence of so substantial an asset as a party's pension rights. In this regard, we adopt the rule representing the current trend and recognize nonvested pension rights as a marital asset.

**b. Valuation and Division.**

■ The trial court assigned a present value of $27,000 to Kenneth's pension, awarded it to him and awarded Marla offsetting assets. Kenneth asserts that there was insufficient evidence to support the present value figure adopted by the trial court. For the reasons stated below we reject generally the present value method of dividing nonvested pensions and remand the case.

Courts have used two primary methods of valuing and dividing pension benefits, whether vested or nonvested, upon divorce: the present value approach and the reserved jurisdiction approach. *Johnson,* 638 P.2d at 708; *Brown,* 126 Cal.Rptr. at 639, 544 P.2d at 567; *Deering v. Deering,* 292 Md. 115, 437 A.2d 883, 891 (1981).[9]

In the present value approach, a court faced with a nonvested pension factors the contingencies to collection into a "reduced to present value" calculation.[10] A similar

---

**9.** A third possible method of division is to award the non-employee spouse a percentage of the employee spouse's contribution to the plan plus interest. *See, e.g., Deering,* 437 A.2d at 891–92; *Bloomer,* 267 N.W.2d at 241. We reject this method because it ignores employer contributions which, to the extent they were made during marriage, ought to be considered a marital asset.

Resort to this method is usually justified on the ground that uncertainties in valuation of a particular retirement plan prevents any other method of valuation. *See, e.g., Barr v. Barr,* 58 Md.App. 569, 473 A.2d 1300, 1310 (1984) *cert.* *denied,* 300 Md. 794, 481 A.2d 239 (1984). But the reserved jurisdiction method, of which we approve, would appear to cover any such circumstance and would more fairly compensate the non-employee spouse for his or her contribution to this marital asset.

**10.** In this case, the trial court relied on Kenneth's testimony as to the present value of his pension. Because we reject the present value method altogether, we do not reach Kenneth's claim that Marla had the burden to produce expert testimony regarding the present value of the pension.

reduction to present value can easily be obtained for a vested pension. The court determines a fraction of the present value representing the marital contribution to the accrued pension benefits. The numerator of this fraction is the number of years the pension has accrued during the marriage; the denominator is the total number of years during which the employee spouse's pension has accrued.[11] *See, e.g., Johnson,* 638 P.2d at 708 & n. 4; *Hunt,* 34 Ill.Dec. at 63, 397 N.E.2d at 519. Once this calculation is complete, the court may award the pension interest to the employee spouse and give the non-employee spouse an offsetting amount of other assets. *Morlan,* 720 P.2d at 498; *Hunt,* 34 Ill.Dec. at 63, 397 N.E.2d at 519.

Citing the goal that a property settlement should provide a final resolution of a divorcing couple's financial affairs, a number of courts have stated that the present value approach is preferred where a present value can be attached to the pension and where there exist other marital assets sufficient to satisfy the non-employee spouse's claim without undue hardship on the employee spouse. *Johnson,* 638 P.2d at 709; *Taylor v. Taylor,* 329 N.W.2d 795, 798–99 (Minn.1983); *Kuchta v. Kuchta,* 636 S.W.2d 663, 666 (Mo.1982); *Kikkert v. Kikkert,* 177 N.J.Super. 471, 427 A.2d 76, 79–80 (Ct.App.Div.), *aff'd* 438 A.2d 317 (N.J.1981); *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343, 350 (App. 1981).

We nonetheless find this method unacceptable. Since the non-employee spouse receives his or her share in a lump sum at the time of the divorce, the method unfairly places all risk of possible forfeiture on the employee spouse. While the probability of forfeiture is supposedly factored in to reduce the present value amount determined at the time of the divorce, it is clear that the non-employee spouse has taken only a reduction in the amount of the award whereas the employee spouse loses the entire amount awarded to the non-employee spouse in the event of forfeiture. We find this approach to be inherently unfair.

In the other scheme used by the courts for valuation and division of a pension, the reserved jurisdiction approach, the trial court retains jurisdiction and orders the employee spouse to pay to the former spouse a fraction of each pension payment actually received.[12] *See, e.g., Johnson,* 638 P.2d at 708; *Brown,* 126 Cal.Rptr. at 639, 544 P.2d at 567. This scheme more evenly allocates the risk of forfeiture between the parties, although it also runs counter to our expressed preference for finalizing a couple's financial affairs as soon as possible. *See, e.g., Bussell,* 623 P.2d at 1224 (holding it preferable to account for a party's financial needs through the property settlement rather than by awarding alimony); *Messina,* 583 P.2d at 805 (same); *see also* AS 25.24.160(3) (alimony should be awarded only if just and necessary).

However, reserving jurisdiction does not necessarily mean that a protracted pay-out to the former spouse will follow vesting. Once vesting occurs, that portion of the pension which is marital property can be calculated as of the time of the divorce. The non-employee spouse's share of this figure may, in appropriate cases, be payable in a lump sum or in installments which do not particularly have to be keyed to the time that the pension benefits are actually received.

We are persuaded that reserving jurisdiction more closely parallels the societal goals of retirement benefits generally—that is, to provide financial security to participants. A present lump sum award to the non-employee spouse calculated on a pension which has not vested does not necessarily promote this purpose. The fact is that nonvested pensions are sometimes forfeited, often for reasons which properly should be within the power of the employee

---

**11.** In this case, Kenneth's entire term of employment with UNOCAL occurred during the marriage.

**12.** This court recently adopted a variation on this method in a case in which the employee

spouse could have begun collecting benefits but desired to continue working. We simply ordered him to pay his wife a monthly amount equivalent to what she would have received if he retired. *Morlan,* 720 P.2d at 498.

to decide, and sometimes for reasons which are entirely beyond the control of the employee. There is no reliable way to factor the contingency of forfeiture into a present value calcuation. Thus, we are willing to accept a degree of continued financial entanglement insofar as that may be necessary to effect a just division of nonvested pension rights.

■ We adopt the following approach for dividing nonvested pension rights after divorce. First, because the nonvested pension may, by definition, be forfeited in its entirety, it should not be considered when the trial court makes the initial property division at the time of the divorce. If and when the employee spouse's pension rights vest and if the parties are unable to reach an agreement on their own, the non-employee spouse may at any time thereafter seek an order dividing the pension. This is to be done in the same manner as if the pension had been vested at the time of the divorce. Realistically, there is such a variety of pension plan designs that it is impossible to develop any one detailed formula that will produce an equitable result in every instance. Once the pension has vested, the trial court can determine whether the present value or the retained jurisdiction approach is appropriate in a given case and adapt that approach to the specific circumstances presented. *See, e.g., Morlan,* 720 P.2d at 498.

As one possible resolution, we direct the trial court on remand to investigate the applicability of the Retirement Equity Act of 1984 (REACT), Pub.L. No. 98–397, 98 Stat. 1426 (1984). REACT applies to retirement benefit plans covered by the Employee Retirement Income Security Act of 1974 (ERISA), Pub.L. No. 93–406, 88 Stat. 829

(1974). The record does not indicate whether Kenneth's UNOCAL pension was such a plan. Under REACT, a "qualified domestic relations order" (QDRO) can be filed with the administrator of the employee spouse's pension plan. 29 U.S.C. 1056(d)(3). If and when the employee spouse's pension vests and matures, the plan administrator makes appropriate payments directly to the non-employee former spouse in accorance with the QDRO. 29 U.S.C. 1056(d)(3)(A). *See generally* Troyan, *Pension Evaluation for Marriage Dissolution Actions: A Pension Evaluator's Perspective,* in McCahey, *supra* p. 16 §§ 45.26–45.39, at 45–105 to 45–136.

REACT thus solves the problem of continuing financial entanglement between former spouses. Moreover, because payments are made directly by the plan, the non-employee spouse is sure to receive the payments to which he or she is entitled.[13] In certain circumstances, REACT allows the non-employee spouse to convert his or her share of the benefits to pay status independently of the employee spouse. 29 U.S.C. § 1056(d)(3)(E).[14]

We reverse and remand for a reevaluation of Kenneth's nonvested pension. If Kenneth's UNOCAL plan is not covered by ERISA, we direct the trial court to retain jurisdiction so that an appropriate division may be made if and when Kenneth's pension becomes vested.

## CONCLUSION

The trial court properly applied the *Merrill* factors and acted within its broad discretion in awarding Marla a greater share of the marital assets. Likewise, it properly credited Marla for her contribution of premarital assets. The trial court did not

---

**13.** It is important to note that REACT affects only the method by which a non-employee spouse may *collect* ERISA pension benefits. The fact and amount of his or her entitlement to the former spouse's pension is determined by state law. 29 U.S.C. § 1056(d)(3)(B).

**14.** Similar provisions for direct payment of retirement benefits to employees' former spouses exist with regard to military and federal civil service retirement benefit plans. *See, e.g.,* 10 U.S.C. § 1408(d)(5); 5 U.S.C. § 8345(j)(1).

Moreover, the Alaska Legislature has enacted an equivalent scheme to govern state employee retirement benefit plans, which became effective January 1, 1987. *See* AS 14.25.153, AS 14.25.-220(43) (teachers); AS 22.25.035, AS 22.25.900 (judicial officers); AS 26.05.224(e), AS 26.05.-229(3) (National Guard and Naval Militia); AS 39.35.455, AS 39.35.680(34) (Public Employees Retirement System).

It thus appears that only in rare circumstances would the QDRO solution be unavailable.

abuse its discretion in ordering Kenneth to make payments on real property awarded to Marla. The trial court correctly determined that Kenneth's nonvested pension was marital property. We reject, however, the method of dividing the pension adopted by the trial court and remand the case for a redetermination of the parties' rights in Kenneth's pension. Because the trial court awarded the entire pension to Kenneth and awarded other assets to Marla in offset, the trial court on remand must reevaluate the entire property division scheme so as to achieve an equitable division.

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.

BURKE, Justice, dissenting.

I disagree with that part of the majority opinion holding that the trial court erred when it used the "present value" approach in disposing of Kenneth's non-vested pension rights. I see nothing inherently unfair about that approach and believe that the decision to use it in the case at bar was proper.

Therefore, I dissent.