Robert Andre GILBOE, Appellant,

v.

Rita GILBOE, Appellee.

No. S–2559.

Supreme Court of Alaska.

March 30, 1990.

Edgar Paul Boyko, Boyko, Breeze and Flansburg, Anchorage, for appellant.

No appearance for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

### I. FACTS AND PROCEEDINGS

The facts material to this appeal were found by the trial court to be as follows. Robert and Rita Gilboe were married on June 24, 1975. At the time, Robert was operating a hotel business, the "Holiday Lodge," in Palm Springs, California. Robert did not own the hotel, but rather leased it. The non-assignable lease began in August of 1972 and ran for a term of five years, with an option to renew for another five years. The option was renewed in 1977, to expire in 1982.

After the parties married, they lived in the hotel and managed it together. Robert primarily was responsible for the maintenance and business management of the hotel, while Rita was responsible for the reception desk, reservations, checking guests in and out, handling complaints, and supervising a three-person staff.

In October 1981 Robert was struck on the head by a piece of scaffolding. This resulted in severe and permanent brain damage and left him "essentially unemployable." Over the next year, Rita managed the hotel alone and the business declined. After the lease expired in October 1982, the Gilboes sold all the hotel's tangible assets. All the proceeds from the sale were spent on living expenses. The Gilboes moved in with friends, paying for their utilities in lieu of rent. Rita, then a licensed cosmetologist, opened a beauty salon with money borrowed from her mother. Robert, being unable to find what little employment he remained capable of doing after the accident in California, came to Anchorage where he earned a minimal salary as a night clerk at a hotel and at an after-hours establishment. From his Anchorage wages, Robert sent $3,815 to Rita between the time of his arrival in Anchorage and his filing for divorce.

In its "Conclusions of Law" numbers XI(A)–(C), the trial court held that Rita had certain "compensable property interest[s]" to be accounted for in the distribution of property. First, the trial court found that Rita's contributions toward management of the hotel from the time of marriage until Robert's injury gave rise to a compensable property interest in the enhanced earning potential of the hotel business based on *her earning capacity*, of $750 per month totalling $57,000 ($750 per month × 76 months), notwithstanding the fact that the hotel had been liquidated. Second, the trial court found that during the last year of the hotel's operations, Rita was primarily responsible for managing it, giving rise to "a compensable property interest in her contribution to the support of both parties during the period" in the amount of $1,200 per month, or $14,400. Third, the trial court found that from the end of the hotel business in October 1982 until the "marriage ended as a joint enterprise November 15, 1985," Rita had an "expectancy of support" from Robert of $750 per month, *her* earning capacity, of which $450 per month was not provided. Rita was thus "entitled to be compensated [in property division] for the shortfall ..." in the amount of $16,650. Rita's "compensable property interest[s]" totalled $88,050. The trial court relied on this figure to justify invading the separate property of Robert.

### II. DISCUSSION

AS 25.24.160(a)(4) grants the trial court broad latitude in making property

divisions in divorce actions. *Laing v. Laing*, 741 P.2d 649, 651 (Alaska 1987). The statute empowers the trial court to divide all property acquired during the marriage and to invade separate property of either spouse if a balancing of the equities so requires. *Id.* We will not disturb such decisions unless they are clearly unjust. *Id.; Bussell v. Bussell*, 623 P.2d 1221, 1222 (Alaska 1981); *Burrell v. Burrell*, 537 P.2d 1, 4 (Alaska 1975). "On the other hand, whether the trial court applied the appropriate legal standards in exercising its broad discretion is a question of law regarding which this court may substitute its independent judgment." *Laing*, 741 P.2d at 651; *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983).

 Factors to be considered in making a property division include:

1. The ages of the parties;
2. Their earning capacity;
3. The duration of the marriage;
4. The conduct of the parties during marriage;
5. The parties' "station in life;"
6. The circumstances and necessities of each;
7. Their health;
8. Their financial condition;
9. The time and manner of acquisition of the property in question;
10. The value of the property at the time of division; and
11. The income-producing capacity of the property.

*Merrill v. Merrill*, 368 P.2d 546, 547 n. 4. However, the *Merrill* factors are not exclusive in determining an equitable division; the trial court may consider other relevant factors. *Laing*, 741 P.2d at 652; *Brooks v. Brooks*, 677 P.2d 1230, 1233 (Alaska 1984). Fault is irrelevant by statute. AS 25.24.-160(a)(4).

 In conclusion XI(A), the trial court credited Rita with $57,000 for her efforts in enhancing the earning capacity of the hotel before Robert's injury. We have held that courts making a property division should consider each spouse's relative contributions to the marriage, "whether of a pecuniary or of a more intangible nature." *Vanover v. Vanover*, 496 P.2d 644, 648 (Alaska 1972); *Bussell*, 623 P.2d at 1223; *Burrell*, 537 P.2d at 4. Where both spouses took an "active interest in the ongoing maintenance, management and control" of a family business run previous to marriage by only one spouse, the enhanced earning potential, or goodwill, of the business may be considered in making a property division. *See Moffitt v. Moffitt*, 749 P.2d 343, 346–47 (Alaska 1988) (citation omitted).

 Implicit in the trial court's conclusion that Rita is entitled to $57,000, however, is a factual determination that there remained goodwill to be divided. "If the trial court determines either that no goodwill exists or that the goodwill is unmarketable, then no value for goodwill should be considered in dividing the marital assets." *Moffitt*, 749 P.2d at 347. The trial court's implicit factual finding that there was a compensable interest for Rita's contribution to the hotel's goodwill is clearly erroneous; the evidence is clear and uncontradicted that as of November 15, 1985, the date of valuation, the hotel had been defunct for about three years and all the proceeds from the sale had been spent on living expenses. There is thus no "enhanced earning potential" in which Rita may share, nor are there any proceeds from the sale to be divided. It might be different if the hotel was still operating as of the date of distribution. *See Moffitt* at 347–48. This, however, is not the case here. Conclusion XI(B), crediting Rita with $14,400 for her efforts in managing the hotel alone from the time of Robert's injury until the time the hotel was closed and sold, suffers from the same infirmity.

 In conclusion XI(C), the trial court considered what it perceived to be a lack of adequate support from Robert to Rita during marriage in making its property division, stating that Rita, based on *her* earning power, had "an expectancy of $750 per month plus lodging" during marriage, of which $400 per month was not "provided" by Robert.

The trial court's decision stands the "relative earning capacities" prong of *Merrill*,

and equitable distribution itself, on its head. The purpose of examining the relative economic positions of each party in the context of property division is to " 'encourage the court to provide for the financial needs of the spouses by property disposition rather than by an award of maintenance.' " *Messina v. Messina*, 583 P.2d 804, 805 (Alaska 1978) (quoting Uniform Marriage & Divorce Act § 308 comment (1973)). It is greater need that may justify a more favorable property division, not less need. Under the trial court's anomalous view, the more Rita is capable of earning, the *more*, not less, property ought to be allocated to her.

## III. CONCLUSION

The judgment of the superior court is REVERSED in part[1] and the case is REMANDED for a redetermination of the property division consistent with this opinion.

---

1. Robert also complains of the wording of various factual findings made by the trial court. Robert's complaints are picayune in nature, affecting no substantive rights.

Robert further complains of the trial court's use of November 15, 1985 as the date for fixing the valuation of marital assets. The date of valuation is committed to the discretion of the trial court. *See Schanck v. Schanck*, 717 P.2d 1, 3 (Alaska 1986). "Each case must be judged on its facts to determine when the marriage has terminated as a joint enterprise." *Id.* Robert filed the complaint for divorce on November 21, 1985. Rita testified that reconciliation discussions went on as late as October or November of 1985. Robert testified that in his mind the marriage was over when he discovered certain letters from Rita to a friend suggesting possible infidelity by Rita. This occurred "in November, I don't really remember when I got them." We cannot say that the trial court abused its discretion in this regard.