FABE, Chief Justice,
with whom BOLGER, Justice, joins, dissenting.
I agree with the court that the only potentially enforceable promise made by David Kelly was his promise to pay Anna Young her marital share of the IFQs.[1] The court avoids deciding whether that promise included sufficiently definite and certain terms to be enforceable because it concludes that there was no marital share of the IFQs to divide.[2] It is with that latter conclusion that I disagree.
When Anna and David fished together on the F/V Arrow in 1984, they were married. *161 The product of their labor in that year was indisputably marital property.[3] Yet the court concludes that the IFQs at issue here belong entirely to David, despite the fact that the IFQs' value increased-and increased directly and measurably-as a result of marital labor.
This unfair result is inconsistent with the explicit purpose of the applicable statute, is not required by our prior decisions, and runs counter to the principles of equitable distribution. In my view, because marital labor increased the value of the IFQs, Anna is entitled to her marital share of that increase in value, even if the IFQs are not themselves marital property.
A. The Explicit Purpose Of AS 25.24.160 Is Equitable Distribution.
Alaska Statute 25.24.160(a)(4) instructs that when a court distributes property after a married couple parts ways, "the division of property must fairly allocate the economic effect of divorce." I acknowledge that the statute also instructs courts to divide "property ... acquired only during marriage," but we must understand that language in the context of the legislature's clear statement of the statute's purpose.[4] Fairness was the legislature's intent, and that goal must be our guide. Equitable distribution of property is no vague policy concern conjured up to avoid unappealing results in particular cases; rather, it is an explicit statutory command that the legislature has indicated must drive our analysis in all cases.[5]
The cireumstances of the present case are unusual in that the property at issue was not formally acquired while the parties were married, nor was it acquired by one of the parties before marriage. Instead, it was formally acquired after the marriage was over, but the extent of the property was partly determined by contributions of labor during the marriage. The legislature could not easily have anticipated these unusual cireum-stances.
B. We Have Previously Interpreted The Phrase "Acquired During Marriage" Broadly When Necessary To Fulfill The Statutory Mandate Of Equitable Distribution.
As the court acknowledges, in our prior cases we have emphasized equitable distribution over a strict interpretation of the phrase "acquired ... during marriage."[6] In particular, our prior decisions relating to pensions, and our application of active appreciation analysis to pre-marital assets, favor the conclusion here that Anna is entitled to compensation for the increase in the value of the IFQs attributable to marital labor in 1984.
In our decisions addressing equitable distribution of pension benefits, we have repeatedly interpreted AS 25.24.160(a)(4) as permitting the conclusion that an ex-spouse is entitled to a share of the marital portion of an employee-spouse's retirement benefits, to the extent that the employee-spouse earned those benefits during marriage.[7] We have held that pension benefits earned for labor performed during marriage may be deemed "acquired ... during marriage" even if they vest after divorce.[8] The court tries to distinguish nonvested pension benefits from the IFQs at issue here, noting our observation in Laing v. Laing that "[plension benefits are *162 generally viewed as deferred compensation for services rendered and the employee spouse's right thereto is a contractual right." [9] The court also concludes that Anna is ineligible for a marital share because while nonvested pension benefits constitute a contractual (even if contingent) right, the parties in this case lacked even an "expectancy" in the IFQs.[10]
But why is it significant that nonvested pension benefits are viewed as deferred compensation? It may be more obvious that an ex-spouse is entitled to the deferred compensation of the other spouse because a salary is clearly marital property,[11] but the claim in this case is not really so different. The underlying reason that deferred compensation is treated as marital property is that the product of labor during marriage is marital property.[12] And this reason supports the conclusion that IFQs are marital property to the extent their value was determined by marital labor. Here, while the IFQs themselves are not compensation for marital labor, there is no question that their size was determined by labor in the base years, including the marital labor in 1984.
We did remark in Laing on the contractual nature of nonvested pension benefits,[13] and as the court notes, the present existence of a legal right may help distinguish property subject to distribution from things of value that should not be so distributed.[14] But we did not say in Laing that a contractual right was necessary to show that a future benefit was "acquired during marriage"; we merely concluded that in that case it was sufficient.[15]
And we also indicated in Laing that our focus was a fair distribution of assets under AS 25.24.160(a)(d). In reaching our conclusion in Laing that nonvested pensions could be marital assets, we explained that regardless of the label placed on the employee-spouse's interest-"a mere expectancy, or a contingent future interest"-"[the non-employee spouse's contribution to the pension asset is exactly the same."[16] The formal designation of the asset was relevant in that case to address whether the contingent nature of the right made it too speculative to be considered marital property.[17] But we indicated that allowing "the contingencies that may prevent the employee spouse from ever collecting his or her nonvested pension ... [to] bar the non-employee spouse from recovering a share if the pension is in fact paid out . would frustrate the statutory command that Alaska courts effect a 'just division of the marital assets."[18] "} Emphasizing the legislature's intent to favor equitable distribution, we noted that "[it would be wholly inconsistent with this policy to ignore the existence of so substantial an asset as a party's pension rights."[19] And we reached that conclusion in Laing even though there was still uncertainty at the time of the divoree proceeding as to whether the asset *163 would materialize.[20] Here there is no uncertainty at all-the asset now exists-and the statutory command of equitable distribution remains unchanged.
Our precedents applying active appreciation analysis are also relevant here.[21] In a nod to our decisions in this area, the court acknowledges that property acquired outside of marriage can become marital to the extent that marital efforts increase its value.[22] As we explained in Hanson v. Hanson, under active appreciation analysis "the asset's value at the inception of the marriage retains its separate character, but any subsequent increase in value is treated as marital property to the extent that it results from active marital conduct.[23]
The court stresses that our decisions applying active appreciation analysis "address premarital property brought into the marriage or separate property acquired during marriage" rather than "property [like the IFQs here) that did not even exist during marriage."[24] The court interprets our decisions as permitting characterization of IFQs as marital only if the "entitlement was earned during marriage" or the "asset ... was plainly earned during the marriage." [25] I recognize that in the typical active appreciation scenario the separate asset exists before it appreciates in value due to a marital contribution, and I do not suggest we should apply that analysis unaltered to the present case. But our active appreciation analysis decisions establish that increases in asset value attributable to marital labor should be treated as marital property, even if the asset itself remains the separate property of the other spouse. And active appreciation analysis counsels against giving undue consideration to formal designations, as our overarching approach has been-and must be-equitable distribution and fairness to the parties whose marital contributions have increased the value of an asset. Thus under active appreciation analysis, the disputed IFQs should remain David's separate property, but Anna should be entitled to her marital share of the increase attributable to the couple's labor in 1984.
Our decisions relating to pensions and our decisions applying active appreciation analysis demonstrate that we have frequently used a broad definition of the phrase "acquired . during marriage" in carrying out the legislature's instruction to divide property in a way that "fairly allocates] the economic effect of divorce." [26] There are good reasons to continue to do so. As one commentator has explained, "substantial disparities often exist between the legal title to an asset and the contributions made to obtain it."[27] To address that disparity, courts in many equitable distribution states have concluded that "the ... definition of acquisition must be entirely independent of legal title." [28] Defining "acquisition" in a way that provides for fairer outcomes, "[elquitable distribution states have almost uniformly held that property is acquired whenever contributions create real value, and not only at the moment when legal title passes." [29]
*164 Here, labor during the base years fed directly into the value of the IFQs. Moreover, in the IFQ context we have previously held that labor during the base years should have some bearing on the determination of a marital share in IFQs.[30] Our decision in Ferguson v. Ferguson indicated that labor during the base years-which can only affect the size of the entitlement, not whether it is granted-must have some bearing on how the quotas are characterized.[31] In concluding that Anna cannot be entitled to any of that value, the court loses sight of the principle behind Ferguson. And by ignoring the definition of "acquisition" adopted in almost all equitable distribution states, the court makes an unduly strong distinction between the qualifying years (which led to the passing of legal title) and the base years (which contributed real value to the IFQs).
The court reasons that if my understanding of "acquisition" were correct, "one would expect to find case law from other equitable distribution states holding that property not yet existing at the time of divorce ... was nonetheless marital."[32] But the court should not take much solace in the fact that no other jurisdiction has yet dealt with the very unusual factual situation of this case involving IFQs. And the court identifies no decisions within an IFQ or other fishery management context in which any jurisdiction, faced with the novel issue of timing presented here, has taken the position the court now adopts.
The IFQs at issue here are a property right with identifiable dimensions and a definite market value: They entitle David to harvest up to a certain amount of halibut each year, or to sell that right to someone else.[33] If David and Anna had not fished in 1984, David presumably would have substituted the F/V Arrow's next-best year when he applied for IFQs, and he would likely have received some smaller entitlement. But David and Anna did fish in 1984, putting their labor-marital labor-into the fishing enterprise. The IFQs David actually received are partly the product of that labor; their increased value can be specifically and precisely traced to the fish that Anna and David caught in 1984. The argument that their labor in that year did not create real value is belied by the inclusion of the 1984 catch, rather than some other year's catch, as a base year in the formula used in calculating the size of the IFQs. If that cold mathematical formula comprehends that marital labor in 1984 created real value, then surely we should too.
I would therefore reverse the superior court with respect to its dismissal of Anna's suit for failure to state a claim and its denial of her petition to reopen the dissolution.[34]

. Op. at 157-58.

. Id. at 158-60.

. See Schmitz v. Schmitz, 88 P.3d 1116, 1125 (Alaska 2004) ("Marital property includes all property acquired during the marriage, excepting only inherited property and property acquired with separate property which is kept as separate property." (internal quotation marks and citation omitted)); see also Lewis v. Lewis, 785 P.2d 550, 558 (Alaska 1990).

. AS 25.24.160(a)(4).

. For example, the legislature has recognized that in order to achieve a fair division of property, it may be necessary for the court to "invade the property ... of either spouse acquired before marriage when the balancing of the equities between the parties requires it." Id. In creating such a significant exception, the legislature has expressed its policy that in dividing property during a divorce proceeding, fairness should prevail over formalism.

. Op. at 158.

. See, eg., Schmitz, 88 P.3d at 1129-30; Williams v. Crawford, 982 P.2d 250, 254 (Alaska 1999).

. Laing v. Laing, 741 P.2d 649, 656 (Alaska 1987).

. Op. at 158-59 (alteration in original) (quoting Laing, 741 P.2d at 656).

. Id. at 159.

. See Schmitz, 88 P.3d at 1124 ("Assets acquired during marriage ...-most commonly salaries earned by either spouse during marriage-are considered marital assets" (quoting Brett R. Turner, EqurrasLe DistRigurtion or Property § 5.23, at 263 (2d ed. 1994))).

. See 1 Brett R. Turner, Eoutrasee Distrisution or Property § 5.22, at 356 (3rd ed. 2005) (noting that "the primary reason for treat[ing a pension] as marital property is ... that the benefit is commonly awarded to employees as actual compensation for marital efforts").

. Laing, 741 P.2d at 656.

. Op. at 160 n. 39.

. Laing, 741 P.2d at 655-56.

. Id. (italics removed) (quoting Lawrence J. Gorpen, Distrimurion or Property 172 (1983).

. Id. at 655.

. Id. at 656 (quoting AS 25.24.160(a)(4)). As we noted in Laing, at least at the time of that decision many jurisdictions considered nonvest-ed pensions "too speculative" to treat them as property subject to equitable distribution at divorce. Id. at 655. Yet we rejected that view, noting that the potentially speculative nature of the pension rights has no bearing on the non-employee spouse's rights vis-a-vis the employee. Id. at 656.

. Id.

. Id.

. See Hanson v. Hanson, 125 P.3d 299, 305 (Alaska 2005) (applying active appreciation analysis and characterizing as marital property the increase in value of business attributable to husband's marital labor); Harrower v. Harrower, 71 P.3d 854, 860 (Alaska 2003) (remanding to trial court for active appreciation analysis); Martin v. Martin, 52 P.3d 724, 727 (Alaska 2002) (explaining and approving the doctrine); Lowdermilk v. Lowdermilk, 825 P.2d 874, 877 (Alaska 1992) {explaining that "[the time and energy of both spouses during the marriage is to be considered in dividing marital property").

. Op. at 159 (citing Harrower, 71 P.3d at 858).

. 125 P.3d at 304 (quoting Harrower, 71 P.3d at 858).

. Op. at 159.

. Id. (emphasis removed).

. AS 25.24.160(a)(4).

. TurNEr® supra note 12, § 5.21, at 344. The typical factual situation in which this concern arises is one in which the economic value of an asset accrues after legal title is taken, for instance in the case of a purchase of real property, with title passing at the time of purchase and mortgage payments building equity over time. See id. at 339.

. Id. at 344 (italics removed).

. Id. at 345 (italics removed).

. See Ferguson v. Ferguson, 928 P.2d 597, 600 (Alaska 1996) (concluding that proportion of marital to separate property in IFQ depended on extent to which value was determined by marital labor).

. Id.; see also TurnE®, supra note 12, § 5.22, at 377 (interpreting our decision in Ferguson to mean that "the proportion [of marital to separate property] must be based on the period used in determining value, and not the period used in determining entitlement").

. Op. at 160.

. See Individual Fishing Quota (IFQ) Program, ALASKAFISHERIES.NOAA.GOV, http://alaskafisheries. noaa.gov/ram/ifq.htm (last visited August 5, 2014).

. However, contrary to Anna's assertion, she is not entitled to half of a 20% share of the IFQs. Marital labor in 1984 increased the value of the IFQs that David received by some proportion. Anna should be entitled to half the value of that increase, that is, half the difference between the value of the IFQs that David actually received and the value of the IFQs David would have received if he had used a non-marital year, rather than 1984, as one of his base years.